IN THE MATTER OF MARK DANIEL FRIEDLAND.

[No. 176S3. Filed June 16, 1978.]

*Sigmund J. Beck,* of Indianapolis, for respondent.

*David B. Hughes,* Indiana Supreme Court Disciplinary Commission, of Indianapolis.

PER CURIAM—This disciplinary proceeding is before this Court on a two-count, verified complaint filed pursuant to

Admission and Discipline Rule 23, Section 12, by the Disciplinary Commission of the Supreme Court. In accordance with the procedure established by Admission and Discipline Rule 23, a Hearing Officer was appointed, a hearing was conducted, and findings of fact were filed by the Hearing Officer. Subsequent to the filing of these findings, the hearing was reopened to consider additional evidence, and the Hearing Officer has filed an amendment to the findings of fact. The respondent in this cause has petitioned for review of the findings and requested oral argument. The petition for oral argument is hereby denied.

Under Count I of the complaint, the respondent is charged with disregarding a ruling of a tribunal made in the course of a proceeding, engaging in undignified and discourteous conduct degrading to a tribunal, making a false accusation against an adjudicatory officer, engaging in conduct prejudicial to the administration of justice, and engaging in conduct which adversely reflects on the respondent's fitness to practice law in violation, respectively, of Disciplinary Rules 7-106(A), 7-106(C)(6), 8-102(B), 1-102(A)(5) and 1-102(A)(6) of the Code of Professional Responsibility.

After examining all matters which have been filed in this cause, this Court now adopts and accepts as its own the findings of fact under Count I of the Hearing Officer. These findings establish that on September 3, 1974, Terrace V. Lanning, who was represented by an attorney, was adjudicated to be the father in a paternity hearing in the Juvenile Court of Marion County and ordered to pay support. After judgment, the respondent entered his appearance and filed a Motion to Correct Errors, which was overruled. On February 8, 1975, the respondent filed in the paternity action a Motion for Relief from Judgment based on newly discovered evidence; and, on the same day, Lanning was found in contempt for non-payment, and a week-end commitment was ordered. The commitment was subsequently set aside, and the Motion for Relief from Judgment was scheduled.

The hearing on the Motion for Relief took place on April 17, 1975, before a duly qualified referee of the Juvenile Court. Accompanying the Motion for Relief was an affidavit signed by the plaintiff in the paternity action, which, in substance, stated that Lanning was not the father of the child. Before this case was called, the respondent stated to the referee, "My people are here and we want to get this case heard right away." The case was taken out of order.

The referee, on this date, was unfamiliar with this case and inquired as to the status of the former counsel. Respondent replied, "What the hell does all that matter? I'm the counsel of record for the defendant now." At this point, the referee reproved the respondent, who apologized for his statement. The respondent then advised the referee that he had succeeded in concluding a settlement agreement, and the referee replied that a paternity case was somewhat different than a civil case.

At the suggestion of the referee, the plaintiff in the paternity case was called as a witness. Respondent, without identifying the witness, asked one question, "Is Terry the father of that child?" The witness answered, "No."

When a deputy prosecutor began cross-examining the witness, the respondent asked, "Who is this person over here?" And then, after being advised that the person was a deputy prosecutor, asked the referee to "dismiss this case once and for all." The respondent was informed that cross-examination would be permitted, and he replied as follows:

"Well, I know the rules, I know the lawyer-like language and I know the res-judicata and the heretobefores. What we are talking about Judge—The woman says he's not the mother (sic) of the child. Therefore, why should he be punished. That's all. The case should be over as both defendant and plaintiff have come to an understanding. . ."

The referee again stated that the matter was not that simple; whereupon, the respondent replied, "This is an ordeal. There's no point in going beyond this thing." The referee then denied the Motion for Relief. The respondent then stated that

his client was not going to pay any money in the paternity action and continued by saying, "This is a travesty. I want this on the record. This is the biggest farce I've ever seen. I want to make a little statement for the record."

At this point in the proceeding, the respondent placed his hands on the counsel table and raised his knee to the edge of the table. The referee admonished him not to climb on the table. After a long colloquy between the respondent, referee, and deputy prosecutor, the referee announced that the matter was concluded. The respondent then shook his fist and stated, "Judge, you're the biggest fool I've ever seen." The hearing was recessed, and a bailiff was instructed to accompany the respondent to a hallway outside of the hearing room. As he was leaving, the respondent stated, "Son of a bitch."

In light of the above findings, it appears appropriate to note that this Court recognizes that an attorney is charged with the responsibility of zealous representation and through his professional skills must assert claims in his client's interest and rebuff allegations to the contrary. This may involve histrionics and vivacity. But when a lawyer's conduct, albeit in the perceived interest of a client, degenerates to vituperations and pettifoggery, a lawyer no longer is acting within the purview of acceptable standards of court room behavior. His conduct then becomes a disservice to his client and an impediment to the administration of justice.

In the present case, when viewing the entire course of respondent's court room behavior on April 17, 1975, this Court must conclude that the respondent engaged in undignified and discourteous conduct which was degrading to a tribunal, was prejudicial to the administration of justice, and reflected adversely on the respondent's fitness to practice law. Accordingly, this Court now finds that by reason of this conduct, the respondent violated Disciplinary Rules 7-106(C)-(6), 1-102(A)(5), and 1-102(A)(6) of the Code of Professional Responsibility.

This Court now must assess an appropriate disciplinary sanction by reason of the misconduct found in this case. The respondent's conduct in this case was unacceptable and without question offended the dignity and decorum of the proceedings held on April 17, 1975. If the record indicated that the respondent deliberately set out to cause such disruption, this Court would have no qualm in imposing a stern sanction; however, this intent does not appear to be present in this case. The record merely suggests that respondent let his emotions overrule his professional judgment. Under these circumstances, a short period of suspension appears appropriate.

In light of the above considerations, and this Court's finding of misconduct, it is, therefore, ordered that the respondent be, and he hereby is, suspended from the practice of law in the State of Indiana for a period of not less than thirty (30) days, beginning August 1, 1978, and that the respondent pay the costs of this disciplinary proceeding.

It is further ordered that the respondent, subject to the provisions of Admission and Discipline Rule 23 § 4(b), shall be automatically reinstated as an attorney following completion of the period of suspension, provided all costs have been paid by the respondent.

NOTE.—Reported at 376 N.E.2d 1126.