IN THE MATTER OF M. DANIEL FRIEDLAND, AN ATTORNEY AT LAW.

Argued November 23, 1982—Decided January 27, 1983.

*Colette A. Coolbaugh,* Secretary, argued the cause for complainant Disciplinary Review Board.

*Jeffrey Barton Cahn* argued the cause for respondent (*Sills, Beck, Cummis, Zuckerman, Radin & Tischman,* attorneys).

PER CURIAM.

This disciplinary proceeding against respondent, M. Daniel Friedland, a member of the bars of Indiana and New Jersey, is based on a finding of professional misconduct made against him in the State of Indiana. On March 12, 1979, the Indiana Supreme Court Disciplinary Commission instituted disciplinary proceedings against respondent in Indiana charging him with

certain acts of unethical conduct. A hearing officer found the charges to have been sustained. The Indiana Supreme Court adopted those findings and ordered that respondent be disbarred.

The Division of Ethics and Professional Services moved for reciprocal discipline in New Jersey. After reviewing the extensive transcripts of the Indiana proceeding, the Disciplinary Review Board (DRB) adopted the facts as found by the Indiana Supreme Court. As found by DRB, the relevant facts are:

"The respondent's disbarment in Indiana followed lengthy proceedings within that State. A verified three count complaint was filed against the respondent on March 12, 1979 by the Indiana Supreme Court Disciplinary Commission. Count 1 of that complaint charged that the respondent had attempted to intimidate and improperly influence Sheldon Breskow, the Executive Secretary of the Indiana Supreme Court's Disciplinary Commission (hereinafter Commission) as well as Commission members in the performance of their duties concerning cases then pending before them in which respondent was involved. Specific acts of alleged intimidation included:

"1. Respondent's statement to Breskow during a conference held on March 20, 1978 at the offices of the Commission, that 'You are a lying bastard, and I am going to get you'.

"2. Respondent's delivery of a letter, which contained references to Breskow's alleged mental illness and was intended to intimidate and ridicule, to Breskow on April 5, 1978. That letter contained the following handwritten notation: 'Shel,

This letter will be sent to 1,000 selected lawyers on Monday if all grievances against me aren't dropped—Buchanan is next.'

"Thereafter, on April 11, 1978, respondent left a telephone message with a Commission employee advising that Breskow had 'an extra day'. On April 13, 1978, respondent mailed to a number of Indianapolis attorneys a revised letter which did not contain any reference to Breskow's alleged mental illness, but did charge Breskow with conducting a personal vendetta against him.

"Count II of the complaint charged respondent with further attempting to intimidate and improperly influence the Honora-

ble Paul H. Buchanan, Jr., a judge of the Indiana Court of Appeals and member of the Commission, together with Breskow and other Commission staff. The respondent's conduct occurred during the same time periods as the incidents discussed in Count I: on March 22, 1978, after appearing without an appointment and being denied a conference with Judge Buchanan, respondent stated to the judge in an angry manner, 'All right, you are on my list'; additionally, respondent wrote on the letter sent to Breskow on April 5 that 'Buchanan is next'. Several weeks later, respondent delivered to Commission offices a draft complaint signed by respondent as attorney for Arthur Anderson naming Buchanan as defendant and claiming $750,000 in damages. On the face of the complaint, respondent wrote: 'To be filed Monday, Shel—I know that Buchanan, not you, calls the shots at the Disciplinary Commission'.

"The third count of the complaint charged respondent with filing and/or prosecuting lawsuits against persons who had either filed grievances with the Commission against respondent, participated in the administrative handling of grievances filed against respondent, or opposed the respondent in court, with the design and intent of harassing and intimidating those individuals in the administration or prosecution of disciplinary grievances filed against respondent. In addition to the threatened action against Judge Buchanan described above, the individual instances which formed the basis for that charge included a federal suit filed in March of 1976 against Alfred Bennett, Supervisor of the Indiana Boys School and prior employee of Anderson, and James Bopp and Seth Lewis, both Indiana attorneys, charging them with conspiring to utilize the Commission to deprive respondent of his civil rights and first amendment privileges, and claiming $250,000 in damages. This suit was filed several months after Bopp and Bennett filed grievances with the Commission, and about one month after Lewis had advised the Commission of his intent to file a grievance against the respondent. Additionally, on September 8, 1976, the respondent filed a class action in federal district court on behalf of

himself and others similarly situated against the Attorney General of Indiana, the Commission, and the individual Commission members alleging conspiracy by these defendants to violate the civil rights of respondent and others who were involved in cases which challenged governmental actions. In another matter, respondent sued James Bradford on September 16, 1977 in an Indiana state court for $75,000 in compensatory damages and $1,000,000 in punitive damages. Bradford filed a grievance with the Commission on August 4, 1977.

"The ethics complaint was filed in March of 1979. A Hearing Officer was appointed to hear the three count complaint against the respondent, and hearings were held in May of 1979. During the proceedings, upon respondent's motion, the complaint was amended to include the Bradford grievance as Count IV of the complaint, to be heard simultaneously with the remaining complaints.

"On June 28, 1979, the Hearing Officer filed his Findings of Fact with the Commission. He found that, *inter alia:*

"1.   With regard to Count I, respondent's conduct

'. . . was conduct designed and intended to intimidate and improperly influence Breskow and members of the Commission in the performance of their official duties regarding the matters concerning the respondent that were then pending before the Commission and the Court.' Findings of Fact I # 13.

The respondent's April 11, 1978 letter was '. . . intended by the respondent to discredit, embarass [sic], intimidate and ridicule Breskow, and to bring pressure by attorneys on the Supreme Court and Commission to change the Commission and cause the grievances to be ended'. Finding of Fact I # 11. The Hearing Officer further found that respondent's efforts to intimidate Breskow continued to the beginning of the Commission hearing, and that respondent had ridden on a bicycle past Breskow's residence and shouted to Breskow that 'he had better hope the Commission did not win this case'. Finding of Fact I # 14. The Hearing Officer concluded that respondent's behavior reflected adversely on the Bar, the Courts and the practice of law, violated the attorney's oath as well as *DR* 1–102(A)(1), (5) and (6). Finding of Fact I # 15.

"2. With regard to Count II, the Hearing Officer concluded that respondent, by his conduct, intended '. . . to intimidate and improperly influence Judge Buchanan and the Commission in the performance of their official duties regarding the various matters concerning the respondent that were then pending. . .'. Finding of Fact II # 8.

"3. With regard to Count III, the Hearing Officer specifically found that Lewis, who had prosecuted a drug charge against one of respondent's clients, gave notice to the Commission that he was going to file a grievance against respondent, was then sued in federal court by respondent, and thereafter '. . . failed to file a formal grievance against the respondent because of the filing of said lawsuit against him'. Finding of Fact III # 10. The Hearing Officer further found as fact:

'18. Indulging every presumption in favor of the respondent's right and freedom to personal access to the courts, the Hearing Officer finds that the above described lawsuits were designed, intended, filed and prosecuted by the respondent to harass, intimidate, impede, and discourage the aforementioned parties defendant from pursuing, administering and processing grievances against the respondent under the disciplinary process provided by Rule A.D. 23. The respondent tends to view the threat of and the filing of a lawsuit as a club or weapon with which to subdue those who would file or prosecute grievances against him. The record in this disciplinary hearing is literally replete with the respondent's threats that he yet intends to sue those that have administered and prosecuted this proceeding in the event the outcome of this cause is not to his liking. Such threat was first enunciated by the respondent in the pre-hearing conference in this matter and continued on a day to day basis throughout the final hearing.

19. The respondent's above described conduct was indicative of such behavior and conduct that reflects adversely on the practice of law and the Bar. The conduct violated the respondent's *Oath of Attorney* as a member of the Indiana Bar and it violated D.R. 1–102(A), (1), (5), and (6), and D.R. 7–102(A)(1) of the *Code of Professional Responsibility for Attorneys at Law*.'

"4. With regard to the Bradford grievance, added to the complaint as Count IV, the Hearing Officer found that the grievance should be dismissed since the evidence did not sustain a charge of professional misconduct.

"The Hearing Officer concluded that respondent showed little or no respect for his oath as an attorney and used the First and Sixth Amendments '. . . to intimidate, coerce and attempt to exhort actions by letters, words and lawsuits'.

"Following oral argument and consideration of the full record, including briefs filed by the parties and *amicus curiae* Indiana Civil Liberties Union, the Indiana Supreme Court on February 10, 1981 accepted and adopted as its own the findings of the Hearing Officer. The Court concluded, at page 8 of its Slip Opinion:

'The evidence in this case also demonstrates that respondent engaged in a pattern of litigation directed toward intimidating and influencing public officials and adverse witesses [sic]. He attempted to use the lawsuit as a weapon against those who administered and prosecuted grievances against him. His motivation is evident from the fact that he directed this litigation at the individuals involved in the grievance process, only tangentially attacking the merits of the issues to be determined through this process. The respondent wanted to punish the persons who filed grievances, and intimidate the persons who administered the process.

* * * The adjudicatory process cannot function when its officers misconstrue the purpose of litigation. The respondent attempted to influence this process through the use of threats and intimidation against the participants involved. This type of conduct must be enjoined to preserve the integrity of the system. Additionally, the adjudicatory process, including disciplinary proceedings, must permit the orderly resolution of issues; respondent's conduct impeded the order of this process.

* * * Accordingly, this Court now finds under all three counts of the complaint filed in this cause, that the respondent engaged in conduct prejudicial to the administration of justice which adversely reflects on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(1), (5), and (6) of the *Code of Professional Responsibility*. This Court further finds, under Count III of the complaint filed in this case, that the respondent took action on behalf of clients when it was obvious that such action would serve merely to harass or maliciously injure another in violation of Disciplinary Rule 7–102(a)(1).'

"The Court noted that the respondent was previously suspended for a 30 day period for 'undignified and discourteous conduct degrading to a tribunal.' *In re Friedland*, 268 *Ind.* 536, 376 *N.E.*2d 1126 (1978). The Court found sufficient similarities in respondent's misconduct in the prior and current proceedings to establish '. . . a pattern indicative of a serious behavioral flaw' and an absence of comprehension of the responsibilities of an Indiana attorney. The Court therefore ordered that respondent be disbarred."

DRB concluded that respondent was accorded due process in Indiana and that there was no infirmity of proof establishing his

misconduct. At oral argument before this Court, his counsel confirmed that respondent had received a fair hearing in Indiana.

The only issue considered by DRB was the discipline to be imposed. In determining the appropriate discipline, DRB noted that "Indiana authorities had advised that a disbarred Indiana attorney may seek to be reinstated five years following the disbarment. Thus, the penalty imposed is not permanent as is disbarment in New Jersey." DRB also considered certain factors that it found to mitigate the amount of discipline to be imposed upon respondent. Those factors included the absence of harm to any client and respondent's motivation, which DRB found to be that "of a high-minded, albeit misdirected individual." As a result, DRB recommended respondent be suspended for two years retroactive to June, 1981.

We accept the factual findings of DRB, but we disagree with the recommended penalty. Respondent's conduct.in the Indiana disciplinary proceedings was not merely intemperate, but egregiously offensive. If that conduct had occurred in New Jersey, disbarment without the prospect of reinstatement might be justified. Under the circumstances, however, we believe the appropriate result should follow more closely the discipline imposed by the Indiana authorities. *See In re Kaufman,* 81 *N.J.* 300 (1979). We conclude that the appropriate discipline is to suspend respondent for five years, retroactive to February 10, 1981, the date of his disbarment in Indiana, and until further order of this Court. The effect of this decision is to make the suspension in New Jersey comparable with the Indiana disbarment. If respondent applies to the Indiana authorities for reinstatement, we shall consider the Indiana proceedings in any future application in New Jersey.

We further order that respondent reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

So Ordered.

*For suspension*—Chief Justice WILENTZ and Justices CLIF-FORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

### ORDER

It is ORDERED that M. DANIEL FRIEDLAND of HART-FORD, CONNECTICUT be suspended from the practice of law for five years, effective as of February 10, 1981, and until the further order of this Court; and it is further

ORDERED that the respondent reimburse the Administrative Office of the Court for appropriate administrative costs, including production of transcripts; and it is further

ORDERED that respondent continue to be restrained and enjoined from practicing law during the period of his suspension and that he continue to comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.