IN THE MATTER OF NORMAN STIER, AN
ATTORNEY AT LAW.

Decided September 30, 1988.

## ORDER

NORMAN STIER, of ELIZABETH, who was admitted to the Bar of this State in 1976, having been ordered to show cause why he should not be disbarred or otherwise disciplined pursuant to *Rule* 1:20–7, based on disciplinary action taken against him in the State of New York, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and NORMAN STIER is suspended from the practice of law for a period of seven years and until the further order of the Court, retroactive to June 21, 1988; and it is further

ORDERED that respondent shall not be eligible to apply for restoration to the practice of law in this State until he has been readmitted to the bar of the State of New York; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of respondent as an attorney at law of the State of New Jersey; and it is further

ORDERED that respondent continue to be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent continue to comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### Report and Recommendation of the Disciplinary Review Board

This matter is before the Board based on a Motion for Reciprocal Discipline filed by the Office of Attorney Ethics. *R.* 1:20–7. The Motion is based on respondent's disbarment by the Appellate Division of the Supreme Court, First Judicial Department, State of New York. *In the Matter of Norman Stier*, 127 *A.D.*2d 342, 515 *N.Y.S.*2d 235 (1987). The facts follow.

Respondent was admitted to the practice of law in the State of New York in 1969. Thereafter he worked as an associate for Louis Mitler, Esq. Eventually, respondent disassociated his practice from Mitler's, although the two remained professional colleagues. Respondent was admitted to the practice of law in the State of New Jersey in 1976. Respondent then worked as a sole practitioner and maintained offices in both states. Ulti-

mately he established an association with another New Jersey attorney.

On June 11, 1980, following Mitler's death, respondent entered into a written agreement with Mitler's widow concerning respondent's substituted representation of certain identified former clients of Mitler. According to the New York Supreme Court, Appellate Division,

Although respondent promised to pay the Mitler Estate a percentage of the fees he received from representing the clients specified in the agreement, he did not do so. The estate was paid only a fraction of the amount to which it was entitled, a circumstance which respondent apparently tried to conceal by repeatedly failing to file retainer and closing statements or failing to file such statements in timely fashion as the rules of this Court require. (Citation omitted.)

In February, 1983 the Mitler estate commenced an action in Supreme Court, New York County, against respondent, his law partner, and his law firm seeking an accounting of fees and disbursements in matters which were the subject of the above-mentioned agreement. Respondent interposed an answer in the action containing numerous denials which were false and known to be so. Thereafter, he failed to appear for his noticed deposition. When, facing court ordered sanctions, he finally did appear for deposition, he testified falsely and failed to produce documents requested by the estate's counsel. Production of the requested documents was subsequently ordered by Special Term, but the order was not complied with. Citing respondent's repeated and willful frustration of the discovery process, the estate moved to strike the answer of respondent and his law partner. The motion was granted by Justice Seymour Schwartz in an order dated October 28, 1983. Justice Schwartz noted that respondent had disregarded two court orders and had 'engaged in dilatory tactics in an effort to avoid court-ordered discovery.' The matter was set down for an inquest. Following the denial of a motion for reargument, respondent and his law partner agreed in July, 1984, to settle the action upon their payment to the Mitler estate of $25,000 and 40 per cent of any future fees collected in specified pending proceedings.

Having been formally charged by the Departmental Disciplinary Committee in connection with the Mitler matter, respondent appeared before committee counsel to be interviewed on January 25, 1985. At that interview he gave false testimony respecting his right to fees in two cases covered by the agreement with the Mitler estate.

\*    \*    \*    \*    \*    \*    \*    \*

The record demonstrates without question that over a period of years respondent systematically breached his agreement with the Mitler Estate so as to enrich himself at the expense of the estate and Mr. Mitler's widow. When called to account for the monies due the estate, respondent compounded his

already numerous wrongful acts by attempting their concealment. His deceitful and, indeed, contemptuous conduct persisted through the above-mentioned civil action and beyond into the disciplinary hearing process. Although respondent now admits his wrongdoing and professes contrition therefor, it cannot be overlooked that this realization is all too recent. Just as respondent's admission of liability to the estate came only after his answer in the accounting proceeding had been stricken and his request for reargument denied, so his newfound remorse surfaced only when it was clear that he would be found guilty of much if not all the charged professional misconduct and would consequently face a stern sanction.

There are no mitigating factors to explain or excuse respondent's behavior. He has been found guilty of 23 separate acts of misconduct each of which was part of a deliberate and sustained attempt to avoid his obligations by the most dishonest means. Although respondent's dishonesty did not adversely affect the interests of a client, we cannot discount the possibility that such behavior will recur in circumstances where clients' interests are implicated. This was not one isolated incident but a willful course of conduct which, as noted, was perpetuated over several years.

It is bad enough when a member of the bar knowingly fails to honor his or her obligations, making legal proceedings necessary. But when, as here, an attorney, in addition, compromises the effectiveness of those proceedings by submitting false pleadings, giving false deposition testimony, and failing to comply with court-ordered discovery to the extent that his pleadings are struck, we are left with little alternative but to impose the sanction of disbarment. [*In the Matter of Norman Stier,* 127 *A.D.*2d 342, 515 *N.Y.S.*2d 235, 237 (1 Dept.1987)].

The New York court concluded respondent had engaged in conduct that involved dishonesty, fraud, deceit or misrepresentation, in violation of *DR* 1-102(A)(4), and that adversely reflected on his fitness to practice law, in violation of *DR* 1-102(A)(6). The court also determined that respondent knowingly gave false testimony, in violation of *DR* 7-102(A)(5) and (6), and disregarded rules and orders of a court, in violation of *DR* 7-106(A). Respondent was disbarred, effective June 15, 1987.

On June 30, 1987, the Office of Attorney Ethics (OAE) filed a Motion for Reciprocal Discipline. On October 8, 1987, respondent moved for a hearing and certain preliminary procedural determinations. Respondent argued that a due process procedural right to a hearing before the New Jersey ethics authorities to present evidence and expand the record to demonstrate his thought processes in his dealings with the estate and with the New York ethics proceedings. He claimed the right to

introduce supplemental evidence in mitigation. Absent such a hearing, respondent argued that *R.* 1:20–7 was unconstitutional. Respondent admitted, however, that he "could not, in good conscious [sic] argue that" there was any deprivation of due process by the New York ethics authorities or that New York did not conduct a thorough hearing. (6T15–20 to 25).[1] He did not contest their factual findings. He also conceded that there was no other mitigating evidence to be presented beyond that presented to this Board at this time.

The Board concluded it was bound by the factual findings of the New York court. Moreover, the Board held it was not the appropriate forum to determine the constitutionality of the rule. Hence, the Board denied respondent's cross-motion. However, the Board accepted all materials submitted. The Board then considered the OAE's motion.

## CONCLUSION AND RECOMMENDATION

■ Upon a review of the full record the Board recommends granting the OAE's motion, although the result should follow more closely the discipline imposed by the New York authorities. Respondent does not dispute the factual findings of the New York Supreme Court, Appellate Division. Hence, the Board adopts those findings. *Matter of Pavilonis,* 98 *N.J.* 36, 40 (1984); *In re Tumini,* 95 *N.J.* 18, 21 (1979); *In re Kaufman,* 81 *N.J.* 300, 302 (1979). The discipline accorded in New Jersey should correspond to that imposed in the other jurisdiction, unless good reason to the contrary is shown. *In re Kaufman, supra,* 81 *N.J.* at 303. The Board majority finds that respondent has not demonstrated good reason for New Jersey disciplinary authorities to impose different discipline than that imposed by the New York authorities.

---

[1] 6T denotes the transcript of the hearing before the Board on November 18, 1987.

■ An attorney is obligated to adhere to the high standard of conduct required of every member of the bar, even when his activities do not directly involve the practice of law. *Matter of Rutledge*, 101 *N.J.* 493, 498 (1986); *Matter of Huber*, 101 *N.J.* 1, 4 (1985); *In re Franklin*, 71 *N.J.* 425, 429 (1976). Any misbehavior, private or professional, which reveals lack of the good character and integrity essential for an attorney, constitutes a basis for discipline. *In re LaDuca*, 62 *N.J.* 133, 140 (1973).

In this case, the Mitler estate was not respondent's client. Nevertheless, he entered into an agreement with the widow of his legal mentor, Louis Mitler, wherein he promised to pay the estate a percentage of the fees he received from representing certain specified former clients of Mitler. He failed to do so. Over a period of years he systematically breached his agreement so as to enrich himself at the expense of the estate. Compounding his dereliction, respondent failed to account for the monies due the estate when requested, and attempted instead to conceal his actions. The estate was forced to pursue civil action against respondent. Respondent lied in his answer to the court. He testified falsely under oath at his deposition and failed to produce documents requested by the estate's counsel. When subsequently ordered by the court to produce the documents, he failed to comply with the court order. The court ultimately struck his answer. The Board finds these actions to be a clear violation of *DR* 7–102(A)(5) and (6) and *DR* 7–106(A). The Board concludes respondent's conduct involved dishonesty, fraud, deceit and misrepresentation, was prejudicial to the administration of justice and adversely reflected on his fitness to practice law, in violation of *DR* 1–102(A)(4), (5) and (6).

As the New York disciplinary authorities found: "[h]is deceitful and, indeed, contemptuous conduct persisted through the ... civil action and beyond into the disciplinary hearing process." In an interview before committee counsel on January 25, 1985, respondent gave false testimony. The Board concludes such deceit before the disciplinary authorities is contu-

macious and disrespectful. *Matter of Winberry*, 101 *N.J.* 557, 567 (1986); *Matter of Rogovoy*, 100 *N.J.* 556, 564 (1985). This second instance of dishonesty and deceit, was also prejudicial to the administration of justice and reflected adversely on respondent's fitness to practice law. His conduct was an equally serious violation of *DR* 1–102(A)(4), (5) and (6).

The only issue to be determined by this Board is the discipline to be imposed. *See In re Friedland*, 92 *N.J.* 107, 113 (1983). Respondent's conduct was egregious and offensive to the reputation of the profession and the integrity of the legal process. His conduct was not an aberration, but a consistent course of conduct over several years in 23 separate instances. Respondent was disbarred in New York. In New York a disbarred attorney may seek reinstatement seven years after the effective date of the disbarment. 22 N.Y.C.R.R. subsection 603.14.

Accordingly, the Board recommends the discipline imposed be similar to that imposed by the New York authorities, namely, respondent be suspended from the practice of law for seven years, retroactive to June 15, 1987 and until such time as respondent is readmitted to practice by the New York authorities. *In re Pavilonis, supra,* 98 *N.J.* at 37. If respondent applies for reinstatement in New York, the Board recommends consideration of a future application for restoration in New Jersey.

Four members of the Board recommend a three-year suspension. These members believe that respondent has demonstrated that his misconduct as established by the New York ethics proceedings warrants substantially different discipline in New Jersey. *R.* 1:20–7(d)(5). They noted in mitigation that respondent settled the civil suit with the Mitler estate. Moreover, although respondent's misconduct spanned several years and several different forums, it all related to his handling of the Mitler estate. He has had no prior disciplinary infractions sustained against him since his admission in 1976. His good character and professional reputation has been affirmed by

numerous letters. The minority concluded a three-year suspension from the practice of law was more appropriate. *See Matter of Kushner*, 101 *N.J.* 397, 403 (1986) (knowingly making a false certification in court to avoid liability on a promissory note he signed resulted in a three-year suspension); *Matter of Reiss*, 101 *N.J.* 475, 491, 492 (1986) (self-serving actions in a business venture with clients and filing a false affidavit with the court, coupled with inadequate recordkeeping, resulted in a one-year suspension).

The Board further recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.