**In re Admonition issued to X.Y.**

**No. C6–94–1504.**

Supreme Court of Minnesota.

April 14, 1995.

689

Jack S. Nordby, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

Marcia A. Johnson, Director, Lawyers Professional Responsibility Bd., Patrick R. Burns, Sr. Asst. Director, St. Paul, for respondent.

Heard, considered, and decided by the court en banc.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility issued an admonition to X.Y. on March 2, 1994. X.Y. demanded and was granted a hearing before a panel of the Lawyers Professional Responsibility Board (LPRB), and the panel affirmed the admonition. We affirm the panel.

1. An admonition is a form of discipline which a

X.Y. was admitted to practice law in Minnesota on May 11, 1984. On June 29, 1991, client hired X.Y. to represent her in two personal injury actions and a retainer agreement was signed. In the course of X.Y.'s representation of the client, a file of approximately 1,200 pages developed. After X.Y. settled one of the cases, with the other still active, the client requested a reduction in the contingency fee set forth in the retainer agreement. When X.Y. refused, the client discharged him and hired a new attorney.

X.Y. asserts that he spoke with the client's new attorney about coming to X.Y.'s office to copy the file before transferring it and the new attorney agreed to do so, but this never occurred. On December 17, 1992, the client requested her file. X.Y. agreed she could have it, but said he wished to retain a copy and suggested they go to Kinko's to copy the file. The client declined. X.Y. further asserts that an effort to obtain guidance on the matter from the LPRB was unsuccessful.

X.Y. thereupon copied the file and personally delivered it to the new attorney's office on December 18, 1992. On October 22, 1993, in a letter to the client's attorney enclosing the settlement draft, X.Y. stated that his expenses for copying the client's file totaled $302.75 and, at least by implication, sought to charge her for these expenses. On that same day, the client filed a complaint with the Director's office claiming that X.Y. had improperly asserted a claim for copy costs when there was no written agreement permitting these charges. On October 25, 1993, the Director's office served a notice of investigation on X.Y., and on March 2, 1994, an admonition was issued. A panel of the LPRB affirmed the admonition on June 15, 1994. We affirm the panel.

Review in attorney discipline proceedings is guided by the clearly erroneous standard. *In re Larsen,* 459 N.W.2d 115, 116 (Minn.1990). Unless the findings in a disciplinary action are clearly erroneous, they will not be set aside. *Id.; In re Ruhland,* 442 N.W.2d 783, 785 (Minn.1989). We have not heretofore set forth the standard of appellate review in admonition appeals,[1] but

director may issue in any matter "with or with-

**690**

since an admonition is a form of discipline, the clearly erroneous standard used in reviewing referee's findings is appropriate. *See In re Appeal of Panel's Affirmance of Director of Professional Responsibility's Admonition in Panel No. 87–22*, 425 N.W.2d 824 (Minn.1988).

■ Pursuant to Minn.R.Prof.Conduct 1.16(d), an attorney is required to "take steps to the extent reasonably practicable to protect a client's interests * * *." Minn.R.Prof.Conduct 1.16(d). These steps include the surrendering of papers and property to which the client is entitled. *Id.* The Director argues that by charging the client for copying the file for his own use, X.Y. failed to comply with the requirement of Minn.R.Prof.Conduct 1.16(d). The Director also argues that X.Y. violated Lawyers Prof. Resp.Board Op. 13 by charging the client for copying her file for his own purposes, in the absence of a written agreement authorizing these charges.

X.Y. argues there was no violation of Rule 1.16(d) because he surrendered the client's file *immediately upon request*. Further, relying on the provisions of his retainer agreement which indicate that the client is to pay "expenses" and "costs," X.Y. asserts there was no dishonesty or overreaching in charging the client for copying the file because he acted in the good-faith belief that he was entitled to reimbursement. He claims that it was reasonably within the contemplation of the parties that these "expenses" would include copy costs. We disagree.

The file belonged to the client and was appropriately returned to her upon her request. However, any copying expenses that were incurred were for the benefit of X.Y., not the client. Therefore, in the absence of a written agreement permitting X.Y. to charge the client for the cost of copying her file, X.Y.'s attempt to collect copy costs violated Minn.R.Prof.Conduct 1.16(d). X.Y.'s retainer agreement made no reference to copying costs upon withdrawal or termination of representation as required in Lawyers Prof. Resp.Board Op. 13 and, therefore, does not

out a complaint, if the Director concludes that a lawyer's conduct was unprofessional but of an isolated and non-serious nature * * *." Rule

supply the missing authorization. We affirm the admonition finding that X.Y.'s conduct in charging the client for the costs of copying her file violated Minn.R.Prof.Conduct 1.16(d), and Lawyers Prof.Resp.Board Op. 13.

Affirmed.

8(d)(2), Rules on Lawyers Professional Responsibility (RLPR).