**In re CHARGES OF UNPROFESSIONAL CONDUCT AGAINST 97–29, an Attorney at Law of the State of Minnesota.**

**No. C3–97–2379.**

Supreme Court of Minnesota.

July 23, 1998.

**16.** *McRae,* 494 N.W.2d at 257.

William J. Wernz, Dorsey & Whitney, LLP, Minneapolis, for Appellant.

Edward J. Cleary, Director, OLPR, St. Paul, for Respondent.

Terrence S. Fleming, Hassan M. Saffouri, Linquist & Vennum, P.L.L.P., Minneapolis, for amicus.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility issued a private admonition to appellant Attorney 97–29 for violating Minn. R. Prof. Conduct 7.3 prohibiting solicitation of professional employment over the telephone. A hearing panel affirmed the

admonition concluding that although three telephone calls in January 1997 did not constitute a rule violation, the initial telephone call to complainant in December 1996 did violate Rule 7.3. We hold that the panel's findings are not clearly erroneous and therefore affirm the private admonition.

Appellant is an attorney in firm practice in Bemidji, Minnesota, working primarily in the area of workers' compensation law. On November 26, 1996, appellant received a resume from complainant in response to appellant's advertisement for a legal secretary. Appellant testified at the hearing panel that he did not consider complainant qualified for the legal secretary position but noticed that complainant was injured and unemployed and possibly eligible for workers' compensation.

Appellant telephoned complainant in late December 1996 and told him that he was not qualified for the legal secretary position but asked complainant if he had been injured on the job. Complainant testified that after confirming that he had been injured at work, appellant asked several questions about complainant's injury, the employer's insurance company, his qualified rehabilitation consultant, and whether he was represented by counsel. Complainant informed appellant that he was represented by attorney P.B., to which appellant responded that complainant was "in good hands." They then talked about P.B.'s possible appointment to the district court bench. Complainant further testified that appellant asked if complainant would mind if appellant contacted him in the future if P.B. became a judge, to which complainant said "whatever" because he "didn't have an objection to that."

Appellant's testimony regarding the conversation differed in that he claimed that complainant volunteered most of the information regarding his workers' compensation claim and that complainant stated that if P.B. became a judge, complainant would like appellant to represent him. Appellant testified that his intent in telephoning complainant was to "assist him with understanding that he had certain rights under the Minnesota Workers' Compensation law and to tell him that if he didn't have an attorney, that he should have an attorney." Appellant claims that his intent was "not necessarily" to represent complainant, but to determine whether he was a workers' compensation claimant and to inform him that he should have "someone to protect [his] rights." After the telephone call, appellant testified that he placed complainant's resume in his file of clients that might need assistance in the future.

Upon learning on January 27, 1997 that P.B. had been appointed to the district court bench appellant telephoned complainant again. Appellant admitted that his intent was to "help all parties out * * * as well as obtain additional business." After appellant identified himself and mentioned P.B.'s appointment, complainant stated that "it probably wasn't a good time to talk" and hung up. Believing that the telephone had malfunctioned, appellant called back. On the second call, complainant expressed anger towards appellant and hung up again. Complainant testified that it was appellant who was irritable on this call and that appellant explained to complainant that "he was just trying to help [him] out and just trying to see if [he] needed a new attorney." In any event, undaunted, appellant telephoned a third time—this time to apologize—but complainant was still angry and said he would report appellant's conduct to the Lawyers Professional Responsibility Board.

Appellant went to P.B.'s office the next morning and expressed regret about his contact with complainant; P.B. responded that he thought appellant's contact was improper. At the panel hearing appellant admitted that he should not have contacted complainant and that he mistakenly believed that complainant gave him permission to call. He further testified that he never requested, persuaded or entreated complainant to hire him.

Complainant filed a complaint with the Lawyers Professional Responsibility Board on February 5, 1997. The Fifteenth District Ethics Committee investigated the complaint and recommended that discipline not be imposed. The Director of the Office of Lawyers Professional Responsibility determined otherwise however, and issued an admonition on May 23, 1997, on the basis that the four

telephone calls violated the prohibition in Minn. R. Prof. Conduct 7.3 against soliciting professional employment by telephone.

After a hearing requested by appellant under Rule 8(e), Rules on Lawyers Professional Responsibility (RLPR), the panel concluded that the three telephone calls made in January 1997 did not constitute a rule violation because appellant could have believed that his calls were invited by complainant, but affirmed the director's admonition as to the first telephone call made in December 1996, concluding that this call was a solicitation of legal employment prohibited by Minn. R. Prof. Conduct 7.3.

Rule 8(d)(2), RLPR, authorizes the director to issue an admonition, the lowest level of discipline available, when a lawyer engages in isolated, nonserious violations of the disciplinary rules, *In re M.D.K.*, 534 N.W.2d 271, 272 (Minn.1995), and the determination to issue an admonition is to be affirmed by the hearing panel if it is supported by clear and convincing evidence. Rule 9(i)(1), RLPR. Here, the panel determined that appellant violated Minn. R. Prof. Conduct 7.3 prohibiting telephone solicitation when he made the first call to complainant in December 1996. The panel concluded however, that the three later telephone calls in January 1997 were not improper because appellant believed that complainant had asked him to call back. We reverse the determination of the panel only if we determine that the panel's decision was clearly erroneous. *In re Admonition issued to X.Y.*, 529 N.W.2d 688, 689–90 (Minn.1995).

Because the panel determined that the three later telephone calls did not constitute a violation, we consider only whether the panel was clearly erroneous in determining that appellant's initial telephone call in December 1996 was a telephone solicitation in violation of Rule 7.3. Appellant argues that the content of the first call should not be considered a solicitation and that application of Rule 7.3 to this situation is unconstitutionally overbroad and vague.

Solicitation of legal business in person or over the telephone is prohibited by Minn. R. Prof. Conduct 7.3, which provides "a lawyer may not solicit professional employment from a prospective client with whom the lawyer has no family or prior relationship, by in-person or telephone contact, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." Appellant argues that the December 1996 telephone call was not a solicitation because he never asked to be hired as complainant's attorney. According to appellant's testimony, the intent of the call was to help complainant understand his rights under the Minnesota Workers' Compensation law and to tell him that he should have an attorney. When asked about the purpose of the first telephone call, appellant replied that his intent was "not necessarily" to represent complainant, but to determine whether he was a workers' compensation claimant and inform him that he should have "someone to protect [his] rights."

Appellant's argument falls short of demonstrating that the panel's conclusion regarding the purpose of the 1996 call was clearly erroneous. Solicitation need not be as blunt as a direct request to represent a party—it can be found in the totality of all the circumstances of the communication including the background of the parties, the parties' previous relationship, the attorney's conduct, and of course the words spoken. The Illinois Supreme Court held that an attorney violated a rule prohibiting in-person solicitation even though the attorney never spoke directly with the potential client. *In re Teichner*, 75 Ill.2d 88, 25 Ill.Dec. 609, 387 N.E.2d 265 (1979). In *Teichner* the son of two injured parties refused the request of an attorney to speak with the son's parents who were hospitalized and to offer his services. *Id.* 25 Ill. Dec. 609, 387 N.E.2d at 268. Additionally, the attorney inquired about their medical condition and he (or his companion) offered to advance the parents money for their medical expenses. *Id.* The son refused both offers. *Id.* The Illinois Supreme Court determined that there was clear and convincing evidence that the attorney solicited employment, even though he never spoke directly with the prospective clients. *Id.* 25 Ill.Dec. 609, 387 N.E.2d at 269.

The totality of all the circumstances here similarly indicates that the purpose of

the telephone call was to solicit business: appellant's practice area is workers' compensation law; the job position that complainant applied for had been filled when appellant placed the December 1996 call to complainant and, in any event, from his resume appellant had determined that complainant was not a qualified candidate; the substance of the conversation pertained exclusively to facts about complainant's workers' compensation claim; appellant asked if complainant was represented with the intent to recommend that complainant retain an attorney, and appellant placed complainant's resume in his file of future clients. The hearing panel's determination that appellant's call to complainant in December 1996 was a solicitation for professional employment was not clearly erroneous.

We next consider appellant's argument that application of Rule 7.3 is unconstitutionally overbroad and vague as applied to the matter now before the court. The United States Supreme Court set out a three-prong test for regulation of commercial speech: (1) "the government must assert a substantial interest," (2) the government must show that the restriction "directly and materially advances that interest," and (3) the regulation must be "narrowly drawn." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–24, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). A federal district court has held that a significant state interest in preventing attorney conduct that is intrusive, unduly influencing and overreaching justifies a prohibition against telephone solicitations, and because of the difficulty of ascertaining the purpose or intent of a telephone call, a total ban is the least restrictive option to advance the state's interest. *Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F.Supp. 1328, 1352–54 (E.D.Tex.1995), *aff'd without opinion*, 100 F.3d 953 (5th Cir. 1996). In *Ohralik v. Ohio State Bar Ass'n*, the Supreme Court upheld a total ban on in-person solicitation: the "potential for overreaching is significantly greater when a lawyer, a professional trained in the art of persuasion, personally solicits an unsophisticated, injured, or distressed lay person." 436 U.S. 447, 465, 98 S.Ct. 1912,

56 L.Ed.2d 444 (1978). For the same reasons, we hold that Rule 7.3 is a constitutional restriction on commercial speech in general, and as applied to appellant's conduct.

The director's admonition is affirmed.