**In re PANEL CASE NO. 17289.**

**No. A03–0141.**

Supreme Court of Minnesota.

Oct. 16, 2003.

---

Pro se, John E. Mack, Mack & Daby P.A., New London, MN, for Appellant.

Kenneth L. Jorgensen, Director Cassie Hanson, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Respondent.

## OPINION

PER CURIAM.

Appellant was issued an admonition by the Director of the Office of Professional Responsibility for submitting frivolous claims on his client's behalf in violation of Minn. R. Prof. Conduct 3.1. An admonition is a private sanction for violations of lawyer ethical rules. A panel of the Lawyers Board on Professional Responsibility affirmed the admonition. Appellant appeals to this court to overturn that decision. We affirm the admonition.

Appellant was admitted to the practice of law in the State of Minnesota on October 17, 1969, and is currently engaged in the practice of law here. Appellant has a history of disciplinary actions. In 1985, he was admonished for a conflict of interest, failure to deposit client funds in his trust account, and failure to promptly deliver client property. In 1991, he was indefinitely suspended from the practice of law for numerous ethics violations, including misappropriating funds from his client trust account, improperly permitting non-lawyers to withdraw funds from the account, depositing personal funds into the trust account to avoid paying withholding taxes, falsely certifying that he kept proper trust books, and knowingly serving a client's false answer to an interrogatory. In 1994, his suspension was continued because he failed to take reasonable remedial measures after learning that his client had testified falsely in a deposition. Appellant was reinstated to the practice of law in 1996. In 2000, he was again admonished, this time for making unsupported allegations against opposing counsel.

Because the admonition subject to review here is directly related to a civil action in which appellant served as counsel, a detailed factual summary of the civil case is in order. The admonition is the result of appellant's conduct in a civil action in which he represented M.G.D., who alleged assault and defamation by H.L.B. The action arose out of a burglary incident at H.L.B.'s cabin.

On September 14, 1997, at approximately 5:00 a.m., M.G.D., who was then a minor, drove two male passengers to a cabin owned by H.L.B. The two passengers intended to break into the cabin, promising M.G.D. they would give him half of anything they took from it. M.G.D. waited in his car while the two passengers pried open a window screen and entered the cabin. Approximately two to three minutes later, the passengers came running out of the cabin toward the car. They told M.G.D. that alarms were going off and they should leave. According to M.G.D., the passengers did not have any property in their possession when they ran out of the cabin.

At the same time, H.L.B., who lived only two miles away from the cabin, received a call from his alarm company alerting him that there was a possible break-in at the cabin. H.L.B. requested that the police be called and then drove to the cabin. Upon arriving at the cabin, H.L.B. saw M.G.D.'s car parked in front of the cabin. H.L.B. stopped his car on the road, attempting to block the road with his car. H.L.B. then got out of his car, taking with him an uncased shotgun. The shotgun was loaded with shells used by H.L.B. for goose hunting.

H.L.B. confronted M.G.D. and his two passengers, who by this time had left the cabin and returned to the car. H.L.B. attempted to detain the suspected burglars until the police arrived, but M.G.D. started to drive his car around H.L.B., at which point H.L.B., who was only a few feet away from M.G.D., shot at the left rear tire of M.G.D.'s car. M.G.D. stopped his car and together with the two passengers got out of the car and started yelling at H.L.B. The four individuals yelled at each other for approximately 30 seconds. After H.L.B. told M.G.D. and the two passengers that the police were on their way, the two passengers ran away from the scene. M.G.D. remained at the scene with his car. A short time later, another car approached on the road. H.L.B., wishing to move his car so the other car could pass by, got into his car, set down his shotgun, and began to move his car to the side of the road. Upon seeing H.L.B. move his car, M.G.D. got into his car and sped away from the cabin. As M.G.D. drove away, H.L.B. fired at least two additional shotgun blasts at M.G.D.'s car. H.L.B. then got into his car and chased M.G.D., but soon gave up the chase.

Upon arriving at the scene, the police examined the cabin for missing items. The police concluded that certain items had been removed from an upstairs cabinet. H.L.B. told the police that a TV and VCR were missing, and subsequently provided receipts for the purchase of these items.

The next day, a local police officer responded to a call from M.G.D.'s parents' residence, informing the officer that M.G.D. may have been involved in the incident. The officer questioned M.G.D. and examined his car. The officer observed that the left-rear hubcap was missing and concluded that it had probably been shot off by a shotgun blast. The officer also observed that there was a small hole on a valance on the rear of the car, possibly made by BB's that had struck the car. This was the extent of the damage observed by the officer.

M.G.D. was charged with Liabilities for Crimes of Another–Second Degree Burglary, in violation of Minn.Stat. §§ 609.05 and 609.582, subd. 2(a) (2002). On April 2, 1998, M.G.D. pleaded guilty to the charge. In a claim for restitution, H.L.B. provided evidence that a TV and VCR were stolen from his cabin. However, M.G.D. continued to insist that neither he nor his passengers took anything from the cabin. In the restitution order, the district court ordered M.G.D. to pay $250 to H.L.B., representing approximately one-third of the value of the stolen property and damage suffered by H.L.B. as a result of the burglary, as well as the amount of H.L.B.'s deductible for insurance on his cabin. Based on the same incident, H.L.B. was charged with and pleaded guilty to possession of an uncased firearm. M.G.D.'s two passengers were never charged.

Later that same month, after paying the $250 in restitution, M.G.D. and his mother approached appellant to discuss the matter with him. Appellant agreed to represent M.G.D. in a civil action against H.L.B. M.G.D. told appellant that the shots fired

by H.L.B. had hit the entire trunk area of his car. Appellant was given papers related to the case, and indicated to M.G.D. that there was no doubt he was guilty of burglary. Appellant did not view the car before submitting the complaint, though he claims he was told at this point that the car had been destroyed.

A few days after meeting with M.G.D., appellant commenced a civil action on M.G.D.'s behalf against H.L.B. Count I of the complaint alleged that [H.L.B.] assaulted M.G.D., stating in part: "In the course of said assault, defendant H.L.B. shot bullets into the vehicle well above the tire-line, including the entire back trunk of the car." Count II of the complaint alleged defamation by H.L.B. and reads as follows:

### I.

After the aforesaid incident, at various times and places, defendant claimed that plaintiff had stolen various items of his personal property.

### II.

Defendant further made false statements to police and prosecutorial authorities, claiming that plaintiff had stolen property of great value from him, knowing that plaintiff had not stolen such item.

### III.

Defendant abused process by making the aforesaid statements to the police and prosecutorial authorities.

### IV.

Defendant maliciously caused plaintiff to be prosecuted by making the aforesaid statements to the police and prosecutorial authorities.

### V.

As a result of such false and defamatory statements to police and prosecutorial authorities and others, plaintiff suffered a loss of reputation and has been forced to expend considerable sums of money to defend himself and clear his name, and has undergone stress and emotional suffering.

H.L.B. answered the complaint and filed a counterclaim against M.G.D. H.L.B. generally denied any liability, making reference to the guilty plea entered by M.G.D. for aiding and abetting burglary. At a pretrial conference in July 1999, the district court inquired about the merits of the defamation claim, but nevertheless the case proceeded to trial.

A jury trial was held December 14–15, 1999. Appellant attempted to submit as evidence pictures that he had recently taken of M.G.D.'s car. The district court refused to admit the pictures into evidence because of their late disclosure and because they had been taken over two years after the incident. The court noted that the photographs did not reveal any visible bullet holes or dents. Appellant presented no evidence in support of the defamation claim. At the close of evidence, appellant successfully sought to amend the complaint to drop the defamation claim and to add a claim of battery. The jury returned a verdict, finding that (1) H.L.B. did not assault M.G.D.; (2) H.L.B. did commit a battery on M.G.D.; (3) M.G.D. did not assault H.L.B.; and (4) M.G.D. did take or cause loss of property owned by H.L.B. or did aid and abet others in doing so. The jury found that $20 was fair and adequate compensation for the battery, and also awarded $250 to H.L.B., which the jury understood to be the amount already paid by M.G.D. in restitution. The court then ordered H.L.B. to pay M.G.D. $20.

Following the trial, appellant made motions on behalf of M.G.D. for a new trial

and additur. H.L.B. then made a motion for sanctions under Rule 11 seeking reimbursement for attorney fees and costs. The district court denied M.G.D.'s motions, but awarded H.L.B. $300 in attorney fees as a sanction under Rule 11. The court stated that the imposition of sanctions was proper because the claim that H.L.B. shot bullets into "the entire back trunk" of M.G.D.'s car was "without evidentiary support." The court noted that appellant had 20 months between the time of the original pleading and the time of trial in which to investigate the claims, yet appellant did not personally view the car until just before trial. The court also stated that sanctions were proper because (1) the defamation claim was without evidentiary support because truth is an absolute defense to defamation, and (2) H.L.B. had a right to report the burglary based on his personal observations of M.G.D.'s behavior and his observations that property was missing from his cabin. The court noted that the defamation claim could have been dismissed at either the July 1999 pretrial conference or the motion in limine hearing the day before the trial.

Appellant submitted an appeal on behalf of M.G.D. for the denial of his post-trial motions and the imposition of $300 in Rule 11 sanctions. The Minnesota Court of Appeals, in an unpublished decision, affirmed the district court's denial of the post-trial motions, but reversed the court's imposition of Rule 11 sanctions because appellant had not been provided sufficient notice based on specific conduct in order to impose sanctions. The court of appeals noted that before and during trial, the only indication that H.L.B. would seek sanc-

tions from M.G.D. was a statement in his answer asking that the district court enter judgment "for all attorney and witness fees, statutory costs and disbursements incurred to defend this meritless cause of action." The court of appeals concluded that "[t]he general request for sanctions did not further the deterrent purpose of sanctions because it did not specifically identify the litigation abuses that [H.L.B.] sought to end."; thus, it did not provide adequate notice to permit Rule 11 sanctions. The court did, however, add:

> We agree with the trial court's determination that there were litigation abuses in this case that warranted sanctions. In particular, [M.G.D.]'s allegation that [H.L.B.] shot bullets into the entire back trunk of the car appears to have no factual basis whatsoever, and [appellant] could have discovered this by simply looking at the car.

In June 2001, H.L.B. filed an ethics complaint against appellant with the Office of Lawyers Professional Responsibility. The Director issued a determination that discipline was not warranted under Rule 8(d)(1), Rules on Lawyers Professional Responsibility. The Director issued his determination without investigating the claim and one of the primary reasons given by the Director for concluding that an investigation was not warranted was that the Rule 11 sanctions had been reversed. H.L.B. appealed pursuant to Rule 8(e), RLPR, and the reviewing Board member directed that the matter be further investigated.[1] After investigation, the Director issued an admonition against appellant for violations of Minn. R. Prof. Conduct 3.1.[2]

---

1. Rule 8(e), RLPR, provides, "If the complainant is not satisfied with the Director's disposition * * * the complainant may appeal the matter by notifying the Director in writing within fourteen days" that the complainant wishes to have the matter reviewed by a

Board member. "The reviewing Board member may: * * * (2) direct that further investigation be undertaken; * * *."

2. Rule 3.1 of the Minnesota Rules on Professional Conduct provides, in relevant part, "[a]

The Director found that there was no evidentiary support for M.G.D.'s defamation claim and no support or effort to investigate the claim that H.L.B. shot bullets into "the entire back trunk" of M.G.D.'s car. Regarding the defamation claim, the Director stated:

> Truth is an absolute defense to a defamation claim. *Jadwin v. Minneapolis Star Tribune Co.,* 390 N.W.2d 437, 440 (Minn.Ct.App.1986). The record regarding the defamation claim is clear: [appellant]'s client pled guilty to second degree burglary *before* the complaint was signed and the lawsuit brought. [Appellant] was aware of the juvenile matter in which his client pleaded guilty and paid restitution to complainant, but nevertheless failed to withdraw the defamation claim until immediately before the case was submitted to the jury. This is a violation of Rule 3.1, MRPC.

The Director also found that the court of appeals reversed the imposition of sanctions under Rule 11 on "technical notice grounds" because appellant had not been provided with sufficient notice that sanctions might be issued.

Appellant appealed the admonition to a panel of the Lawyers Board on Professional Responsibility, as provided by Rules 8(d)(2)(iii) and 9(a), RLPR. The panel affirmed the admonition in February 2003. Appellant filed a notice of appeal with our court under Rule 9(m), RLPR, asking us to overturn that decision.

■ We review a decision to issue an admonition by determining whether the decision was clearly erroneous. *In re Admonition issued to X.Y.,* 529 N.W.2d 688, 689–90 (Minn.1995). The purpose of attorney discipline is to provide protection to the public. *In re Disciplinary Action Against Walker,* 461 N.W.2d 219, 222 (Minn.1990). Discipline is imposed according to the facts of each case. In determining appropriate sanctions for misconduct, we weigh: (1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession. *Id.*

Rule 8(d)(2), RLPR, authorizes the Director to issue an admonition, the lowest level of discipline available, when a lawyer engages in isolated, nonserious violations of the disciplinary rules. *In re Charges of Unprofessional Conduct against M.D.K.,* 534 N.W.2d 271, 272 (Minn.1995). We have affirmed admonitions based on minor violations of a single rule. *See In re Panel File Number 99–5,* 607 N.W.2d 429, 431 (Minn.2000) (affirming an admonition of a lawyer for violating Minn. R. Prof. Conduct 1.2(a) for failing to take a settlement offer to an opposing party which his client wanted presented); *In re Charges of Unprofessional Conduct Against 97–29,* 581 N.W.2d 347, 351 (Minn.1998) (affirming an admonition of a lawyer for soliciting business in violation of Minn. R. Prof. Conduct 7.3 when lawyer made a telephone call specifically soliciting). An admonition is issued in lieu of the Director's presenting charges of unprofessional conduct to a panel. Rule 8(d)(2)(ii). The expectation is that the offending lawyer will "exhibit a renewed commitment to ethical behavior" in the future. *In re Disciplinary Action Against Iliff,* 487 N.W.2d 234, 236 (Minn. 1992).

■ Appellant's first argument is that the admonition should be overturned because it is not appropriate in this case based on principles of collateral estoppel.

___

lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

According to appellant, principles of collateral estoppel, while "not * * * directly relevant in the ethics context," should prevent an admonition based on violations of Minn. R. Prof. Conduct 3.1 where sanctions under Rule 11 have been considered, but not imposed. Barring that, appellant argues that the notice requirement of Rule 11 should be read into Minn. R. Prof. Conduct 3.1.

■ Collateral estoppel "precludes parties from relitigating issues which are identical to issues previously litigated and which [are] necessary and essential to the former resulting judgment." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn.1990). But, as appellant admits, collateral estoppel is not directly relevant in this case because issues dealt with in civil litigation and legal ethics are not identical. Moreover, the contention that principles of collateral estoppel should apply ignores fundamental differences between the Rules of Civil Procedure and the Rules of Professional Conduct. "The purpose of attorney discipline is not to punish the attorney, but rather to protect the public, the courts, the legal profession, and the administration of justice." *In re Disciplinary Action Against Albrecht*, 660 N.W.2d 790, 794 (Minn.2003) (citing *In re Disciplinary Action Against W. Shaughnessy*, 467 N.W.2d 620, 621–22 (Minn.1991)). Considerations for imposing ethical sanctions differ from considerations of Rule 11 sanctions. For example, when imposing sanctions for an ethical violation, we consider the lawyer's disciplinary history, "especially when the [past] discipline is for misconduct similar to present violations because an attorney is expected to show 'renewed commitment' to professional ethics after being disciplined."

*Id.* (quoting *In re Disciplinary Action Against Iliff*, 487 N.W.2d at 236).

■ Appellant's other contention, that the notice requirement of Rule 11 should be read into Minn. R. Prof. Conduct 3.1, also fails to recognize the difference between civil litigation penalties and ethical standards for professional misconduct. In *Kellar v. Von Holtum*, 605 N.W.2d 696, 701 (Minn.2000), we held that when a party does not give notice of intent to seek sanctions until after the appeals process has concluded, attorney fees cannot be awarded as a sanction under Rule 11. It was on this basis that the court of appeals reversed the district court's imposition of sanctions under Rule 11. The Minnesota Rules of Professional Conduct do not provide for a notice requirement to Rule 3.1, however, and we decline to read such a requirement into the rule. The Rules of Professional Conduct serve a different purpose than Rule 11 civil litigation penalties; therefore, we conclude that appellant's argument lacks merit.

■ Appellant next argues that the panel was clearly erroneous in affirming the admonition because he claims he had a good faith basis for the claims that "[H.L.B.] shot bullets into the car above the tire-line, including the entire back trunk of the car" and that H.L.B. "made false statements to the police and prosecutorial authorities" which "maliciously caused" M.G.D. to be defamed. In reviewing allegations of professional misconduct, we analyze behavior using an objective standard "dependent on what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances."[3] *In re*

---

**3.** Appellant argues that a subjective standard should be applied to the application of Minn. R. Prof. Conduct 3.1. We decline to adopt such an exception. Appellant cites *In re Pen-*

*nie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003), for the proposition that a subjective standard should be used. *In re Pennie & Edmonds* holds that a subjective bad faith

*Disciplinary Action Against Graham,* 453 N.W.2d 313, 322 (Minn.1990.)

M.G.D. told appellant that his car had been shot at least three times and that one of the blasts had struck the entire rear end of the car. Appellant possessed some of the police reports and statements to the police, which indicate damage only to the valance in the rear and damage to the hubcap on the left rear tire and provide no evidence that the trunk of the car was shot with "bullets." The Director argues that appellant should have inspected the car for damages before making a statement in the complaint. Furthermore, the Director argues that appellant should have obtained, before submitting the complaint, whatever police reports, statements, and papers related to M.G.D.'s plea agreement that appellant did not have in his possession.

■■■ As for the defamation claim, appellant relies on the legal distinction between burglary and theft as the basis for his argument that H.L.B. maliciously caused M.G.D. to be defamed. Second-degree burglary, to which M.G.D. pleaded guilty, is defined as entering a dwelling "without consent and with intent to commit a crime" or "commit[ting] a crime while in the building, either directly or as an accomplice * * *." Minn.Stat. § 609.582, subd. 2(a) (2002). M.G.D.'s plea of guilty to second-degree burglary was not an admission that he had stolen H.L.B.'s personal property. Despite pleading guilty

and paying $250 in restitution, M.G.D. has consistently claimed that he was not involved in stealing any property. The district court heard these arguments and found that the TV and VCR "were not in the car driven by [M.G.D.]." Nonetheless, the district court ordered M.G.D. to pay H.L.B. $250 for stolen and damaged property. Given the restitution order, M.G.D. could not plausibly claim that H.L.B. maliciously caused him to be defamed by discussing the incident with the authorities.

After considering all of appellant's arguments, we conclude that the Director's admonition should be affirmed. Our standard of review in this matter is to set aside the Director's decision only if it is clearly erroneous. *In re Admonition issued to X.Y.,* 529 N.W.2d at 689–90. Here, the Director found that there was no evidentiary support for M.G.D.'s defamation claim and no support or effort to investigate the claim that H.L.B. shot "bullets" into "the entire back trunk" of M.G.D.'s car. Based upon this record, we cannot conclude that the Director's decision to issue an admonition was clear error. Further, appellant's history of stepping over similar ethical boundary lines supports the issuance of an admonition. In affirming the Director's decision, we do so based on the facts before us in this case and note that nothing in our opinion should be construed to prevent lawyers from making a "good faith argument for an extension,

standard applies to the imposition of Rule 11 sanctions under the Federal Rules of Evidence in a case in which a judge, sua sponte, initiated a post-trial Rule 11 sanction proceeding such that the challenged lawyer did not have the safe harbor to withdraw the challenged document. In *In re Graham,* however, we held that the standard for reviewing a charge that a lawyer had made false allegations against a judge in violation of Minn. R. Prof. Conduct 8.2 "must reflect that level of competence, of sense of responsibility to the legal system, of understanding of legal rights

and of legal procedures to be used only for legitimate purposes and not to harass or intimidate others, that is essential to the character of an attorney practicing in Minnesota." 453 N.W.2d 313, 322 (Minn.1990). Moreover, both this court and the federal courts generally apply an objective standard of behavior in applying Rule 11 sanctions. *See Uselman v. Uselman,* 464 N.W.2d 130, 142–43 (Minn.1990); *Bus. Guides, Inc. v. Chromatic Comm. Enters., Inc.,* 498 U.S. 533, 544–47, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

modification or reversal of existing law," as Minn. R. Prof. Conduct 3.1 specifically allows. Lawyers need, and are permitted, reasonable latitude in pleading their causes of action and fleshing them out before the court.

For all the reasons above, we affirm the admonition.

Affirmed.