**In re Petition for Disciplinary Action against J. Timothy KAINE, an Attorney at Law of the State of Minnesota.**

**No. C1–87–1830.**

Supreme Court of Minnesota.

May 27, 1988.

William J. Wernz, Director of the Lawyers Professional Responsibility Bd., St. Paul, for appellant.

Edward F. Kautzer, St. Paul, for respondent.

PER CURIAM.

Respondent gave assistance to another attorney who was engaged in misappropriating funds from a client's estate. We impose an indefinite suspension, with no possibility of reinstatement for 5 years.

Respondent J. Timothy Kaine was admitted to practice in 1978. On June 24, 1987, respondent met with John T. Benson, a former law school classmate, who asked respondent's assistance in a trust matter. Some 9 months earlier, Benson had drafted an agreement between himself and Vivian Young, an elderly widow and long-time family friend, whereby Mrs. Young gave the bulk of her estate to Benson in return for Benson's promise to take care of Mrs. Young for the rest of her life. Other documents prepared by Benson made Benson trustee and beneficiary of a trust containing all of Vivian Young's assets. Benson asked respondent to sign the papers so as to make it appear that respondent had drafted them at Mrs. Young's request. Respondent did so. Benson paid respondent

$2,000, apparently promising an additional $3,000. Respondent had never met Vivian Young and, of course, had never advised her.

A week later respondent learned through a newspaper article that Benson was being sued for misappropriation of some $90,000 from Vivian Young and was being investigated by the Lawyers Board of Professional Responsibility. Even so, respondent, for his services, cashed Benson's $2,000 check. On July 14, 1987, respondent gave a voluntary, unrecorded statement to the Lawyers Board of Professional Responsibility, confirming that he had, indeed, drafted the trust documents. Subsequently, arrangements were made for respondent to give a formal, sworn statement on July 31, 1987. Prior to this date, respondent met with Benson to fabricate testimony (going so far as driving to the Young house to view the interior so as to be able to add authentic detail to his testimony). On July 31, respondent gave extensive testimony that he had counseled Mrs. Young, drafted all the documents, and had ensured that her wishes were followed. The director then issued charges against respondent for inadequate counseling of Mrs. Young. On further investigation, however, the director developed evidence indicating that respondent's signature and his typed signature block had been added to the trust documents some time after the preparation of the documents themselves. Confronted with this evidence, respondent retracted his prior fabricated testimony and admitted that he had not counseled Vivian Young nor prepared the documents.

The referee found that respondent had conspired to alter and fabricate trust documents, had accepted payment for this misconduct, had conspired to fabricate false testimony, and had given false testimony, both sworn and unsworn, with the intention of obstructing the investigation of the Young matter. The referee found no mitigating factors, including "no causal link" between respondent's use of alcohol and his misconduct. The referee noted, however, that respondent's misconduct did not have a direct, adverse effect on Vivian Young's financial affairs. The referee recommended a 1–year suspension with certain conditions.

The referee likened this case to *In re Danna,* 403 N.W.2d 239 (Minn.1987). There the attorney submitted client affidavits to the court which had not been seen, read, or signed by the client. The attorney had signed the client's name, then notarized the documents himself. Later, when investigated, the attorney perjured himself to block the inquiry. We imposed a 90–day suspension, observing that the information in the affidavits was essentially correct and no harm was done the client. The conduct here, however, reveals a serious moral deficiency. The director suggests a better comparison is *In re Bernstein,* 404 N.W.2d 804 (Minn.1987). There the attorney misappropriated $325 from a personal injury settlement and went to great lengths to cover up the misconduct, including misrepresentations to the client, fabrication of documentary evidence, and perjury. We suspended for at least 4 years. *See also In re Daffer,* 344 N.W.2d 382 (Minn.1984).

■ We have seriously considered disbarment here, but generally, we have used disbarment where there has been a continuing pattern of misconduct. *See, e.g., In re Carey,* 380 N.W.2d 806, 809 (Minn.1986). Here, respondent's misconduct does not involve an extended pattern of violations over a long period of time. Rather, we have this one episode where the respondent yielded to temptation after being importuned by another lawyer. Respondent did not seek to share in Benson's misappropriation, but after he was questioned, he insisted on digging his hole deeper.

■ Even though we do not disbar, respondent's misconduct is most disturbing. When he altered the documents to give them an appearance of legality, he may not then have known his erstwhile friend had been cheating the client, but he could not have been so naive as not to know something was amiss, that the $2,000 was suspiciously easy money, and that what he was being asked to do was contrary to the most basic ethical standards. After altering the documents, he compounded his misconduct

by conspiring with Benson in an elaborate charade to protect not only himself but Benson in callous disregard of Mrs. Young's plight.

We conclude that respondent be suspended indefinitely from the practice of law, with the right to apply for reinstatement on or after 5 years from this date. The referee recommended that respondent pay the Board attorney fees of $1,000 plus costs. This obligation is made a further condition for reinstatement.