In re Petition for Disciplinary Action against Damon L. WARD, an Attorney at Law of the State of Minnesota.

No. C7–96–978.

Supreme Court of Minnesota.

May 22, 1997.

Martin A. Cole, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for Appellant.

Michael J. Hoover, Minneapolis, for Respondent.

## OPINION

PER CURIAM.

What discipline is appropriate when an attorney gives false testimony under oath, presents the false testimony of a client and represents a client despite an impermissible conflict of interest? We order that the respondent in this matter, Damon L. Ward, be suspended for six months, with reinstatement to be automatic if Ward has complied with the requirements of Rule 26, Rules on Lawyers Professional Responsibility (RLPR), and successfully completes the professional responsibility portion of the bar examination, pursuant to Rule 18, RLPR, within one year of the date of this order.

This troubling disciplinary matter grows out of events that occurred while Ward was a student at Hamline Law School in 1990. While in law school, Ward became acquainted

with Lateesa Agunbiade and Wynette Head, who were also Hamline students. Ward and Agunbiade eventually became engaged and are now married.

During Ward's first two years of law school, he leased an apartment in St. Paul with his brother, who was also a law student. Ward spent most of his time, however, at Agunbiade's house. In approximately August of 1990, after Ward's brother had graduated from law school, Ward moved in with Agunbiade at her home. Agunbiade's mother, Agunbiade's young daughter and son, and Wynette Head and her daughter, were also living in the home at that time.

In September 1990, Head obtained a federally subsidized apartment in Roseville. Head did not actually move into the apartment, however. Instead, she continued to reside at the Agunbiade home. Ward moved some of his extra furniture and belongings into Head's Roseville apartment and paid Head approximately $200 per month in rent. He continued to spend almost all of his time at the Agunbiade residence, but spent a few nights at the Roseville apartment.

In October 1993, Head was sued by the Shelter Corporation, the owner of her Roseville apartment, for reimbursement of the rent subsidies she received between September 1990 and October 1993. The suit was based on Head's failure to report certain income, including the rent Ward had paid her. Ward acted as Head's attorney in the matter.

As part of the litigation, Ward was subpoenaed as a witness for a deposition. The attorney for Shelter Corporation suspected that Ward had subleased the apartment, providing Head with additional income that she failed to report. Both Ward and Head were deposed, and both denied that Ward had lived in the apartment and had paid rent to Head.

In November 1995, Head became the subject of a disciplinary investigation by the Lawyers Professional Responsibility Board (Lawyers Board), based upon allegations that she had wrongfully obtained public assistance because she failed to report certain income, and that she had testified falsely in her earlier deposition. During the course of the investigation, Head told Ward that she had lied to the Lawyers Board about the rent and the sublet. Ward, who was no longer acting as her attorney at that time, advised her to tell the truth to the Lawyers Board, which she subsequently did. In 1996, this court suspended Head for three years in connection with the allegations described above. *In re Head,* 557 N.W.2d 167 (Minn.1996).

In May 1996, the Director of the Office of Lawyers Professional Responsibility filed this petition against Ward, alleging that he had testified falsely in a deposition, had knowingly offered the false testimony of a client in a deposition, and had represented the client despite an impermissible conflict of interest. After a hearing, the referee concluded that Ward had presented false testimony, in violation of Rules 3.4(b), 8.4(a) and 8.4(c), Minnesota Rules of Professional Conduct (MRPC); offered the false testimony of a client, in violation of Rules 3.3(a)(4), 3.4(b), 8.4(c) and 8.4(d), MRPC; and undertook a client matter despite an impermissible conflict of interest, in violation of Rule 1.7(b), MRPC.

The referee also found that Ward had cooperated in the investigation process, recognized his errors and was genuinely remorseful. He accepted Ward's claim that "in his own mind, he felt he was not being untruthful in stating that he did not 'live' at the apartment." The referee also made reference to factors he considered to be mitigating: Ward's relative youth and inexperience as an attorney, his strong commitment to the community, his history of pro bono work and the strong character evidence supplied by a number of witnesses, including one of his professors at Hamline Law School and the partner who supervised him at the law firm where he was then employed. Finally, the referee concluded that Ward was unlikely to commit misconduct in the future.

■ The referee recommended that Ward be suspended from the practice of law for not less than 90 days and that he be required to comply with the reinstatement provisions of Rule 18, RLPR, as well as the requirements of Rule 26, RLPR. The Director recommends that Ward be indefinitely suspended with no

right to apply for reinstatement for at least 18 months. Ward requests that the referee's recommendation be accepted, except that he be allowed to apply for reinstatement by affidavit.

■ Because neither party disputes the referee's conclusion that Ward's actions constituted professional misconduct, the only question before this court is what level of discipline is appropriate. A referee's recommendation is not binding on this court. *In re Boyd*, 430 N.W.2d 663, 664 (Minn.1988). While we usually place great weight on recommendations made by a referee, we alone have the final responsibility to determine the appropriate discipline. *Id.* Because each case involves a different factual setting, different violations, and different mitigating or aggravating circumstances, the inquiry into the appropriate measure of discipline is necessarily subjective. *Id.* at 664–65. Prior disciplinary case law is helpful only through analogy. *Id.* at 665. This court weighs four factors in considering appropriate discipline: the nature of the misconduct, the cumulative weight of disciplinary violations, the harm to the public, and the harm to the legal profession. *In re Jagiela*, 517 N.W.2d 333, 335 (Minn.1994).

■ We note at the outset that the conduct at issue here—lying under oath and allowing a client to lie under oath—is very serious. "Our legal system depends on the truthfulness of the testimony of witnesses and false testimony strikes at the very heart of the administration of justice." *In re Salmen*, 484 N.W.2d 253, 254 (Minn.1992). We therefore agree with the referee that suspension from the practice of law is appropriate. We are troubled, however, by the referee's reliance on youth and inexperience as mitigating factors for Ward's misconduct because we believe youth and inexperience do not mitigate acts of dishonesty.

Further, in arriving at his 90–day recommendation, the referee relied on a 1987 case that involved an attorney who forged his client's signature on two affidavits, notarized them, and held them out as truly signed by the client. *See In re Danna*, 403 N.W.2d 239, 240 (Minn.1987). In addition, the attorney hid the forgery from his own client and

lied to the Lawyers Board about the forgery. *Id.* The referee's reliance on *Danna* is misplaced because the sanction imposed in that case is outdated. In *Danna*, we warned that we would impose stronger sanctions in the future if 90–day suspensions did not succeed in deterring attorneys from engaging in misrepresentations. *Id.* at 241. Since *Danna*, we have tended to impose sanctions harsher than a 90–day suspension for acts of misconduct involving dishonesty.

For example, in *In re Boyd*, 430 N.W.2d 663 (Minn.1988), we imposed a six-month suspension on an attorney who forged a warranty deed, backdated the deed, coached his client to forge the signature of her father as the grantor, directed a notary public in his office to certify the false signature, and then provided a title opinion for a bank based on the forged deed. *Id.* at 663–664. In *In re Jagiela*, 517 N.W.2d 333 (Minn.1994), we also imposed a six-month suspension on an attorney who backdated an agreement that he had drafted, gave the agreement with the false date to opposing counsel and to a bankruptcy court, and then failed to correct the false date in deposition testimony concerning the document. *Id.* at 334. In *In re Zotaley*, 546 N.W.2d 16 (Minn.1996), the attorney took a generic insurance endorsement form from another unrelated file and held the form out as if it were part of the client's insurance policy. *Id.* at 17. We suspended Zotaley for six months as well. *Id.* at 21.

Taking into account the serious nature of the misconduct, false testimony under oath, and our recent disciplinary practice in similar cases, we conclude that the referee's recommendation of suspension for 90 days is insufficient and that a six-month suspension is warranted on these facts.

It is therefore ordered:

1. That respondent, Damon L. Ward, is hereby suspended from the practice of law for six months, commencing 14 days from the date of this order;

2. That respondent comply with the requirements of Rule 26, Rules on Lawyers Professional Responsibility.

3. That respondent successfully complete the professional responsibility portion of the bar examination pursuant to Rule 18(e), Rules on Lawyers Professional Responsibility, within one year of the date of this order. The remaining requirements of Rule 18, Rules on Lawyers Professional Responsibility, are waived.

SO ORDERED.