In re Petition for DISCIPLINARY AC-
TION AGAINST Dean Milton MAR-
GOLIS, an Attorney at Law of the State
of Minnesota.

No. C8–96–2058.

Supreme Court of Minnesota.

Nov. 26, 1997.

Edward J. Cleary, Director, Patrick R.
Burns, Sr. Asst. Director, Office of Lawyers
Prof. Responsibility, St. Paul, for relator.

Michael J. Hoover, Minneapolis, for re-
spondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers
Professional Responsibility filed a petition
for disciplinary action against respondent
Dean Milton Margolis in response to com-
plaints about his treatment of two clients.
*See* Rule 12(a), Rules on Lawyers Profes-
sional Responsibility (RLPR). The disciplin-
ary petition alleged that Margolis forged a
purported client's signature on a retainer
agreement, attempted to settle a case against
another client's express wishes, and then at-
tempted to cover up his wrongdoing in both
cases by lying and fabricating evidence in
violation of the Minnesota Rules of Profes-
sional Conduct. After a two-day hearing,
the referee found that Margolis had falsely
claimed to represent a client in a workers'
compensation matter; that he attempted to
cover up his misrepresentation by forging
the alleged client's signature on a retainer
agreement and by lying to an investigator
from the Department of Labor and Indus-
try's Fraud Investigation Unit; that he at-
tempted to settle another workers' compen-
sation claim without the client's knowledge
or consent; and that he attempted to conceal
the unauthorized settlement attempt and to
thwart the disciplinary investigation by fabri-
cating a memo to the file memorializing a
conversation in which the client authorized
settlement. The referee recommended that
Margolis, who had not been disciplined be-
fore, be suspended for a minimum of one
year.

In February 1996, a chiropractor who had
referred several cases to Margolis's firm
called Margolis because a workers' compen-
sation insurer had refused to pay for treat-
ment the chiropractor had provided to an
injured worker, David Maag. In response to

the chiropractor's request for help, Margolis agreed to seek payment for the chiropractor and sent a letter that same day to Maag scheduling an appointment for the following week. In a follow-up letter to their initial conversation, the chiropractor informed Margolis that Maag was "slightly mentally handicapped." Several days later, Margolis filed a medical request claim on behalf of Maag with the Workers' Compensation Division of the Department of Labor and Industry (DLI) seeking payment for the chiropractor's services. Although Margolis had already sent the letter scheduling an appointment to Maag, he had neither spoken to nor been retained by Maag at the time he submitted the medical claim form. In response to the claim Margolis filed, the insurance company agreed to pay Maag's outstanding bill from the chiropractor for $717.00. The insurance company also reimbursed Maag for his out-of-pocket payments.

Once Margolis had secured payment from the insurance company, he sent a claim to the DLI for attorney fees amounting to $116.67 for 50 minutes of work on the Maag matter. Under *Roraff v. State Department of Transportation*, 288 N.W.2d 15 (Minn. 1980), a workers' compensation insurer must pay attorney fees when an injured employee has requested payment of a health care bill and the DLI approves the claim. In contrast, *Roraff* fees are not available when a medical service provider seeks payment. *See Kehren v. BNK Masonry*, 43 Workers' Comp. Dec. 548, 551 (W.C.C.A.1990). Although the claim form that Margolis sent in stated that a signed retainer dated February 16, 1996, was attached, no retainer or other document was in fact attached. Maag had not retained Margolis, and thus no such retainer form existed.

The workers' compensation judge ordered the insurance company to pay Margolis the requested $116.17 in attorney fees. Counsel

for the insurance company then called Margolis to request a copy of the retainer agreement. Margolis prepared a sham agreement, backdated it to February 19, 1996, and forged Maag's signature on it. The insurance company's attorney noticed that the signature on the purported retainer agreement did not match Maag's signature on other documents, and she asked the judge to set up a conference with Margolis. At the conference, the judge questioned the validity of Maag's signature. Margolis stated that he did not know who signed the agreement and that he believed the signature was in place when the chiropractor returned the agreement.

The judge reported the matter to the DLI's Fraud Investigation Unit. When questioned by an investigator, Margolis again stated that he had sent the retainer to the chiropractor and it was returned to him with the signature in place, but that he had no idea who had actually signed the retainer. Margolis also wrote a letter to the workers' compensation judge on April 23, 1996, requesting that the judge not refer the Maag matter to the Office of Lawyers Professional Responsibility. He stated that he had not done anything inappropriate and thus there was no basis for a complaint. During the disciplinary hearing, Margolis acknowledged that he was wrong to tell the judge that nothing inappropriate had occurred, and that what he had meant was that no harm had been done.

The referee found that Margolis forged David Maag's signature to a retainer agreement and then knowingly filed documents containing false statements with the DLI in violation of Minnesota Rules of Professional Conduct 3.3(a)(1) and (4); 3.4(b); 4.1; and 8.4(c) and (d).[1]

---

1. Rule 3.3 governs candor toward the tribunal. Rule 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of fact to a tribunal. Rule 3.3(a)(4) provides that a lawyer shall not knowingly offer evidence that she or he knows to be false. Rule 3.4 addresses fairness to opposing parties and counsel. Rule 3.4(b) states that a lawyer shall not falsify evidence. Rule 4.1 provides that in the course of representing a client a lawyer shall not knowingly make a false statement of fact or law. Rule 8.4 deals with attorney misconduct. Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Rule 8.4(d) states that it is professional misconduct to engage in conduct that is prejudicial to the administration of justice.

At the same time Margolis was embroiled in the Maag matter, he was also in the midst of trouble with another workers' compensation matter. Margolis had negotiated on behalf of Meseret Fekade with her employer's workers' compensation insurer for several months. Fekade was born in Ethiopia, had difficulty with the English language, and was unfamiliar with the American legal system; the referee characterized her as "disadvantaged." In February 1996, Margolis conferred with Fekade about the possibility of settling her claim for $15,000. Fekade rejected this proposal outright.

Two days later, the insurance company offered to settle with Fekade for $10,000. The settlement offer included the condition that all future medical benefits be closed out. Margolis did not contact Fekade about the settlement offer, and Fekade had not agreed to the proposed terms. Instead, Margolis quickly faxed the insurer an acceptance of the offer. Several days later, still without having discussed the settlement with Fekade, Margolis called the Office of Administrative Hearings and cancelled a scheduled hearing on her case, stating that the matter had been settled. Although Margolis mailed various documents concerning the settlement to Fekade, she first learned about the settlement offer from her physical therapist.[2] When Fekade went in for a scheduled appointment, the therapist told her that she would be personally responsible for the fee because her case had settled and thus the insurer would no longer pay for the therapy.

When Fekade subsequently met with Margolis about the attempted settlement, she questioned its terms and told him there were aspects of it she did not understand. In spite of her concerns, Margolis urged her to sign the stipulation for settlement "for her own good," telling her that she did not need to understand everything and that she should trust him. Not wanting to sign a stipulation containing terms to which she had not agreed, Fekade took it home and eventually decided not to sign it. She also decided to discharge Margolis. Her new attorney settled her case for $22,500, and the stipulation for settlement did not close out all future medical benefits.

Fekade filed a complaint with the Office of Lawyers Professional Responsibility at the end of March 1996. In his response to the complaint, Margolis denied that he lacked authority to settle Fekade's case for $10,000. To support his denial, he attached a handwritten memo to his file that purportedly documented a phone call with Fekade on February 16, 1996, during which she authorized a lump sum settlement payment of $10,000. During his deposition, Margolis reiterated his contention that he had full authorization to settle Fekade's claim. In fact, no such telephone call ever occurred, and Margolis fabricated the memo in response to the disciplinary complaint. Not until Margolis filed his Amended Answer in January 1997 did he admit that he had fabricated the settlement authorization memo.

Margolis argued, and the referee found, that an attorney cannot bind a client to a settlement of a workers' compensation claim because such a settlement is effective only after a client has executed a written stipulation. Nonetheless, the referee concluded that Margolis's attempt to settle Fekade's claim without her consent violated Minnesota Rules of Professional Conduct 1.2(a) and 1.4.[3]

■ Margolis has admitted all of the allegations against him, and neither the director nor Margolis dispute the referee's findings of fact and conclusions of law that Margolis's actions constitute professional misconduct. The only issue before this court, therefore, is the appropriate level of discipline to impose. *See In re Ward,* 563 N.W.2d 70, 72 (Minn.1997). The court gives

---

**2.** The referee found that Margolis mailed the documents to Fekade over a long weekend and thus she did not have notice of the attempted settlement before she went to the physical therapist.

**3.** Rule 1.2(a) provides that a lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. Rule 1.4 addresses communication with the client. Section (a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. Section (b) provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"great weight" to the referee's recommendation, but it is ultimately responsible for determining a proper sanction. *In re Harp*, 560 N.W.2d 696, 700 (Minn.1997). This court has typically used four factors to determine the appropriate level of discipline: the nature of the misconduct; the cumulative weight of the disciplinary violations; the harm to the public; and the harm to the legal profession. *In re Jagiela*, 517 N.W.2d 333, 335 (Minn. 1994). Cases involving similar misconduct may serve as guides to reaching a conclusion. *In re Thedens*, 557 N.W.2d 344, 347 (Minn. 1997).

In the instant case, the referee recommended that Margolis be suspended for at least one year. In stark contrast to the referee's recommendation, the director seeks disbarment or suspension for a significantly longer period of time than one year. In support of the request for disbarment, the director argues that Margolis's conduct is similar to the misconduct at issue in *In re Graham*, which led to the attorney's disbarment. 503 N.W.2d 476 (Minn.1993). In *In re Graham*, the attorney's misconduct included fabricating evidence in his own bankruptcy proceedings to conceal assets from creditors; fabricating evidence in his own divorce proceedings; fabricating retainer letters in response to client complaints and then suing those clients based on the fraudulently made agreements; failing to appear at his trial for violating an order of protection; failing to file federal income tax returns for four years; and failing to participate whatsoever in the disciplinary proceeding that resulted in his disbarment. 503 N.W.2d at 477–79. *See also In re Jones*, 383 N.W.2d 303, 304–06 (Minn.1986) (disbarring attorney who misappropriated client funds, lied under oath, filed a lawsuit knowing she had no legal grounds, and refused to cooperate with disciplinary proceedings whatsoever). In addition, Graham had received two previous private admonitions before the petition leading to his disbarment was filed. *In re Graham*, 503 N.W.2d at 479.

The disbarment of Graham comports with this court's view that disbarment is appropriate "only when there is a continuing pattern of gross neglect of clients, misrepresenta-tions to the court and other patterns of misconduct which constitute a great danger from which the public needs immediate protection." *In re Carey*, 380 N.W.2d 806, 809 (Minn.1986) (citations omitted). In contrast, Margolis's conduct, although troubling and deserving of a serious sanction, is simply not sufficiently egregious to justify disbarring him.

In the alternative, the director cites *In re Kaine* as support for a longer period of suspension. The attorney in *In re Kaine* received a five-year minimum suspension for conspiring with another attorney to defraud an elderly widow of her estate. 424 N.W.2d 64 (Minn.1988). The director characterizes *In re Kaine* as a conspiracy to fabricate false documents and to obstruct a disciplinary investigation. This summary, however, does not reveal the seriousness of Kaine's misconduct. A law school classmate paid Kaine $2,000 to alter trust documents and to testify falsely that he had drafted a trust in which a widow gave the classmate her entire estate of $90,000 in return for a promise to take care of her. 424 N.W.2d at 64–65. Kaine told disciplinary investigators that he had indeed counseled the widow and drafted the trust documents according to her wishes, and he reiterated his lies under oath. *Id.* at 65. Although Margolis lied to investigators and fabricated evidence, his conduct does not approach the harmfulness of Kaine's actions.

Having concluded that Margolis's misconduct does not warrant disbarment or a period of suspension significantly longer than one year, we now examine three recent decisions involving attorneys' continuing misrepresentations to the court or disciplinary authorities, or their fabrication of evidence. In *In re Ward*, decided last term, we suspended for six months an attorney who gave false testimony under oath, knowingly offered a client's false testimony, and represented a client despite an impermissible conflict of interest. 563 N.W.2d at 70–71. Likewise, we ordered a six-month suspension of an attorney in *In re Zotaley* who had submitted evidence from a different client's file during an insurance arbitration, repeatedly failed to inform opposing counsel he had done so, and then failed to take remedial action after he

learned that the arbitrator had used the evidence as the basis of his decision. 546 N.W.2d 16, 17–18 (Minn.1996). We described his conduct as "a three-month course of deception during which he should have informed opposing counsel and the arbitrator that the document he was relying on as his principal piece of evidence was taken from another client's file." *Id.* at 21. Finally, an attorney was suspended for six months for backdating a document submitted to opposing counsel and to a bankruptcy court and then repeatedly failing to correct false statements about the date the document was executed. *In re Jagiela*, 517 N.W.2d at 336.

In light of our decisions in these three cases, we believe that the referee's one-year suspension recommendation is an appropriate sanction for Margolis's misconduct. Margolis's initial misconduct in both the Maag and Fekade matters was serious. His misrepresentation that Maag was his client and his attempts to pressure Fekade into a settlement that she had not approved of clearly violate established standards of professional conduct. We are also concerned with his attempts to conceal his misconduct. In the Maag case, Margolis lied to the workers' compensation judge, opposing counsel, and the DLI investigator about the source of the signature on the retainer agreement. In the Fekade matter, he created a false memo to the file in a deliberate effort to thwart the disciplinary investigation. Margolis compounded his wrongdoing by lying during a deposition. As we stated in *In re Ward*, "the conduct at issue here—lying under oath * * *—is very serious." 563 N.W.2d at 72.

The cumulative weight of Margolis's misrepresentations and his attempts to conceal them require a lengthier period of suspension than the six-month suspensions imposed in *In re Ward*, *In re Zotaley*, and *In re Jagiela*. A suspension for one year is justified by the harm his misconduct caused to his clients and his diminishment of the integrity of the disciplinary process and the judicial system as a whole.

It is the judgment of this court that Dean Milton Margolis be suspended from the practice of law for 12 months, commencing 14 days from the date of this opinion. His

reinstatement to the practice of law shall be conditioned upon compliance with the requirements of Rules 18 and 26, RLPR. Finally, in accordance with Rule 24, RLPR, Margolis shall pay to the Director the sum of $900 in costs and disbursements.