In re Petition for DISCIPLINARY AC-
TION AGAINST Lori Mae MICHAEL,
a Minnesota Attorney, Registration
No. 312149.

No. A12–1101.

Supreme Court of Minnesota.

Sept. 18, 2013.

Martin A. Cole, Director, Kevin T. Slator, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Lori Mae Michael, Apple Valley, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against attorney Lori Mae Michael, alleging that Michael engaged in various acts of professional misconduct in violation of the Minnesota Rules of Professional Conduct. After an evidentiary hearing, the referee concluded that Michael violated the Minnesota Rules of Professional Conduct as alleged in the petition and recommended that Michael be suspended for a minimum of 60 days. The referee also recommended that Michael be required to petition for reinstatement under Rule 18, Rules on Lawyers Professional Responsibility (RLPR). We conclude that Michael committed professional misconduct that warrants a 30–day suspension to be followed by supervised probation for a period of two years.

Michael was admitted to practice law in Minnesota in 2001. In 2006, Michael was admitted to practice law in the Prairie Island Tribal Court and remained licensed in the tribal court until 2010. From February 2006 to February 2007, Michael worked for Prairie Island Indian Community (PIIC) as assistant general counsel to the tribe. After working for PIIC, Michael worked as a solo practitioner. This disciplinary action arises out of actions Michael took while representing two clients, W.M. and E.C., in the course of child protection proceedings in the tribal court.[1]

Michael's representation of W.M. and E.C. began in August 2008; it was her first case as a solo practitioner. W.M. and E.C. are the paternal grandparents of C.C., the minor child whose care and custody was in dispute in the tribal court proceedings. In addition to W.M. and E.C., the parties involved in the proceedings included C.C.'s mother and father, C.C.'s maternal grandparents, and PIIC Family Services (Family Services). Family Services had several concerns about C.C.'s welfare. One concern arose out of allegations that members of C.C.'s family, including W.M. and C.C.'s mother and/or stepfather, had physically and sexually abused C.C. Law enforcement in Dodge County and Goodhue County investigated the allegations of abuse.

In late November 2009, E.C. sent a letter to the tribal court requesting visitation with C.C. on Thanksgiving. The PIIC Clerk of Tribal Court advised Michael of E.C.'s letter and told Michael that she needed to file a formal motion with the tribal court regarding the visitation request. Michael filed a motion, but Family Services and C.C.'s mother opposed the motion. On November 25, 2009, Michael inquired about the visitation request in an e-mail sent to the PIIC Clerk of Tribal Court and the presiding tribal court judge. Michael also sent the e-mail to opposing

---

1. Minnesota Rule of Professional Conduct 8.5(b) contains a choice of law provision that governs when we apply the rules of professional conduct of another jurisdiction in attorney discipline matters. The parties have not raised the applicability of Rule 8.5(b), Minn. R. Prof. Conduct, in this case. We, therefore, apply the Minnesota rules to Michael's conduct.

counsel. Michael asserted that the opposition to the visitation request was unwarranted. At the end of her e-mail, Michael stated, "If this was any other party, I would ask, would the court be treating them the same?" Before reading Michael's e-mail, the tribal court issued an order denying the visitation request as untimely. The tribal court later amended its order to address what it viewed as Michael's "unfounded assertion ... of bias by the Court." The tribal court found Michael's conduct contemptuous and fined her $100.

The following month, attorney Matthew Begeske, who represented C.C.'s mother, moved the tribal court to disqualify Michael as counsel for W.M. and E.C. Begeske argued that Michael had a conflict of interest because when Michael was assistant general counsel for PIIC, she represented PIIC in a child welfare matter involving C.C.'s mother, who at the time of the representation was a minor and pregnant with C.C. In its December 30, 2009 order, the tribal court disqualified Michael from representing W.M. and E.C. before the tribal court. The tribal court, however, did not disqualify Michael from representing W.M. and E.C. in the tribal court of appeals or any other court. Michael maintained an attorney-client relationship with W.M. and E.C. outside of the tribal court matter involving C.C.

After Michael was disqualified from representing W.M. and E.C. in the tribal court, Michael contacted Assistant Goodhue County Attorney Erin Kuester to discuss the status of Goodhue County's criminal investigation into allegations of physical abuse of C.C. by her parents. Kuester informed Michael that there was not enough evidence to pursue charges and that the County was prepared to formally decline prosecution. Michael argued with Kuester about the County's decision and

offered to send Kuester an audio recording of C.C.'s mother that Michael claimed to be additional evidence of abuse. W.M. sent the audio recording to Kuester on January 14, 2010, and the County's letter declining prosecution was sent the next day to local law enforcement, W.M. and E.C., and Family Services.

Meanwhile, proceedings were continuing in the tribal court. In light of the concerns about C.C.'s welfare, the tribal court had appointed David Jacobsen, a licensed attorney, to serve as C.C.'s guardian ad litem. After Jacobsen learned that Dodge County and Goodhue County had no evidence to substantiate the claims of abuse, he filed a report recommending what he believed to be the best placement option for C.C. Jacobsen also decided to prepare a motion to withdraw from his position as C.C.'s guardian ad litem.

On March 22, 2010, Jacobsen received an e-mail from Michael in which she emphasized the importance of Jacobsen's role as C.C.'s guardian ad litem and shared with Jacobsen information that she had learned about Goodhue County's investigation of the abuse allegations. Michael also stated, "I can't protect them in tribal court, but [I] am still there in the tribal court of appeals, and state court." Because Michael had been disqualified from representing W.M. and E.C. in the tribal court, Jacobsen forwarded the e-mail to the tribal court. Once informed of Michael's e-mail to Jacobsen, the tribal court issued an order directing Michael to appear and show cause why she should not be held in contempt for failing to comply with the tribal court's disqualification order.

In her response to the order to show cause, Michael argued that her e-mail to Jacobsen was protected by the attorney-client privilege because it was a "confidential correspondence between attorneys"

and because the e-mail contained "confidential information that she had obtained from her clients." At the contempt hearing that followed, Family Services brought Michael's contact with Kuester to the attention of the tribal court. Family Services asserted that the contact occurred after Michael was disqualified from representing W.M. and E.C. in the tribal court. Michael contested this claim and asserted that she spoke with Kuester before she was disqualified. Because Michael and Family Services disagreed about when Michael's contact with Kuester occurred, the tribal court ordered Kuester to submit a letter to the court. Kuester subsequently advised the tribal court that, based on her review of her records and her memory of the conversation, she believed the conversation occurred in mid-January 2010.

The tribal court issued a contempt order, concluding that by e-mailing Jacobsen, Michael "violated Minnesota Rule of Professional Conduct 1.16 by continuing to represent [W.M. and E.C.] after being discharged ... and also directly violated [the tribal court's] order removing her from representation." The tribal court characterized as "specious" Michael's argument regarding the application of the attorney-client privilege to her e-mail with Jacob-

sen. The tribal court also concluded that, although Michael's conduct in contacting Kuester did not violate its disqualification order, Michael violated Rule 3.3(a)(1), Minn. R. Prof. Conduct, "by being less than candid ... in asserting that she did not talk to [Kuester] after being removed." Michael's subsequent appeal of the tribal court's contempt order was dismissed as frivolous.

The Director filed a petition for disciplinary action against Michael, alleging that Michael's conduct related to her representation of W.M. and E.C. violated Rules 1.16(d),[2] 3.1,[3] 3.3(a)(1),[4] 3.4(c),[5] and 8.4(c)-(d),[6] Minn. R. Prof. Conduct. Michael filed an answer to the petition, contesting the Director's allegations and alleging various due process violations. After an evidentiary hearing, a referee found that the tribal court had concluded that Michael violated the tribal court's disqualification order and Rule 1.16(d), Minn. R. Prof. Conduct, by contacting Kuester and Jacobsen. The referee also found that Michael had "alleg[ed] judicial bias" in her e-mail to the tribal court and opposing counsel and that Michael's statement during the tribal court contempt hearing re-

**2.** Rule 1.16(d) states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred."

**3.** Rule 3.1 states that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

**4.** Rule 3.3(a)(1) states that "[a] lawyer shall not knowingly ... make a false statement of fact or law to a tribunal, or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

**5.** Rule 3.4(c) states that "[a] lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

**6.** Rule 8.4(c)-(d) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or to "engage in conduct that is prejudicial to the administration of justice."

garding the timing of her contact with Kuester was knowingly false.

Based on its findings, the referee concluded that Michael's statement to the tribal court that her conversation with Kuester took place before she was disqualified from representing W.M. and E.C. violated Rule 3.3(a)(1), Minn. R. Prof. Conduct (knowingly false statement), Rule 8.4(c), Minn. R. Prof. Conduct (conduct involving dishonesty), and Rule 8.4(d), Minn. R. Prof. Conduct (conduct prejudicial to the administration of justice). The referee also concluded that Michael's "conduct in continuing to represent W.M. and E.C. after being disqualified from representation" violated Rule 1.16(d), Minn. R. Prof. Conduct (failure to protect client interests), Rule 3.4(c), Minn. R. Prof. Conduct (knowingly disobeying obligation to tribunal), and Rule 8.4(d), Minn. R. Prof. Conduct. In addition, the referee concluded that Michael's arguments "to justify or excuse her ... e-mail to Jacobsen" violated Rule 3.1, Minn. R. Prof. Conduct (frivolous arguments) and Rule 8.4(d), Minn. R. Prof. Conduct, and that Michael violated Rule 8.4(d), Minn. R. Prof. Conduct, by accusing the tribal court of being partial in her e-mail to the tribal court and opposing counsel. Finally, the referee concluded that Michael's inexperience is a mitigating factor, but Michael's lack of remorse and failure to recognize and take responsibility for her conduct are aggravating factors.

The referee recommended suspension of Michael for a minimum of 60 days with a requirement to petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. The referee also recommended placement on supervised probation upon Michael's reinstatement.

Michael alleges that her right to due process was violated during the disciplinary proceedings. Michael also challenges certain findings of fact made by the refer-ee, as well as the referee's conclusions that her conduct violated the Minnesota Rules of Professional Conduct. Finally, Michael contests the referee's recommendation for discipline and argues that suspension is not warranted in this case. The Director argues that the referee's findings of fact and conclusions of law should be affirmed and seeks imposition of the referee's recommended discipline.

## I.

We first address Michael's claim that she was denied due process of law during the disciplinary proceedings. Whether due process has been afforded is a question of law, which we review de novo. *In re Murrin,* 821 N.W.2d 195, 206 (Minn.2012). We observe principles of due process in disciplinary proceedings; but because such proceedings are neither civil nor criminal, they "are not encumbered by technical rules and formal [due process] requirements." *In re Gherity,* 673 N.W.2d 474, 478 (Minn.2004). Rather, in determining whether an attorney was afforded due process in a disciplinary proceeding, we consider whether "the charges against the attorney were sufficiently clear and specific" and whether "the attorney was afforded an opportunity to anticipate, prepare and present a defense." *In re Murrin,* 821 N.W.2d at 206 (citations omitted) (internal quotation marks omitted). We "may also consider whether the attorney had an opportunity for a hearing at which [the attorney] could present evidence of good character and mitigating circumstances." *Id.*

We conclude that Michael's right to due process was not violated in the course of the disciplinary proceedings. The charges against Michael alleged in the petition are sufficiently clear and specific. The petition discusses Michael's conduct while representing W.M. and E.C. and asserts that

Michael's conduct violated Rules 1.16(d), 3.1, 3.3(a), 3.4(c), and 8.4(c)-(d), Minn. R. Prof. Conduct. Michael filed an answer defending her conduct, which demonstrates that she understood the charges against her. In addition, Michael had the opportunity to anticipate, prepare, and present a defense to the charges alleged in the petition. At an evidentiary hearing, Michael called and cross-examined witnesses and presented evidence on her own behalf. Finally, Michael "had the opportunity to present evidence of good character and mitigating circumstances" at the evidentiary hearing. *In re Murrin*, 821 N.W.2d at 206 (citation omitted) (internal quotation marks omitted). Because Michael's allegations to the contrary plainly lack merit, we conclude that Michael was afforded due process in the disciplinary proceedings.

## II.

■ We next consider whether the referee erred in his findings of fact or conclusions of law. Because a transcript of the disciplinary hearing was ordered in this case, "the referee's findings of fact and conclusions of law are not conclusive." *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn.2011). We give "great deference to the referee's findings of fact and will not reverse those findings 'if they have evidentiary support in the record and are not clearly erroneous.'" *In re Coleman*, 793 N.W.2d 296, 303 (Minn.2011) (quoting *In re Varriano*, 755 N.W.2d 282, 288 (Minn. 2008)). A finding of fact is clearly erroneous when, after conducting our review of the finding, we are left with a definite and firm conviction that a mistake has been made. *In re Ulanowski*, 800 N.W.2d at 793. "With regard to the conclusions of law, we review 'the interpretation of the MRPC de novo, and ... the application of the MRPC to the facts of the case for clear error.'" *Id.* (quoting *In re Aitken*, 787

N.W.2d 152, 158 (Minn.2010)). In a disciplinary proceeding, it is the Director's burden to prove by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *In re Grigsby*, 764 N.W.2d 54, 60 (Minn.2009).

### A.

■ We begin our review of the referee's findings and conclusions by examining those findings and conclusions related to Michael's e-mail to Jacobsen. The referee found that Michael knowingly violated the tribal court's disqualification order when she e-mailed Jacobsen on behalf of W.M. and E.C. and discussed the tribal court child protection matter. This conduct, the referee concluded, violates Rule 3.4(c), Minn. R. Prof. Conduct, which prohibits an attorney from knowingly disobeying an obligation under the rules of a tribunal, and Rule 8.4(d), Minn. R. Prof. Conduct, which prohibits conduct prejudicial to the administration of justice. Michael challenges both the referee's finding that she knowingly violated the tribal court's disqualification order and the referee's conclusions that she violated Rules 3.4(c) and 8.4(d). Her arguments are unavailing.

The tribal court determined that Michael's e-mail to Jacobsen was sent in violation of its disqualification order. In this e-mail, Michael discussed her disqualification from representing W.M. and E.C. These actions demonstrate that although she was aware of her obligations under the tribal court's disqualification order, she nonetheless contacted Jacobsen about the tribal court matter. *See* Minn. R. Prof. Conduct 1.0(g) (stating that the term knowingly "denotes actual knowledge of the fact in question" and that "knowledge may be inferred from circumstances"). On this record, the referee's finding that Michael knowingly violated the tribal court's disqualification order and the referee's

conclusion that Michael violated Rule 3.4(c) are not clearly erroneous. *See In re Lundeen,* 811 N.W.2d 602, 605–06 (Minn.2012) (stating that attorney's failure to comply with court order violated Rule 3.4(c)). The referee's determination that Michael's violation of the tribal court's disqualification order was conduct prejudicial to the administration of justice, in violation of Rule 8.4(d), also is legally sound. *See id.; see also In re Mayrand,* 723 N.W.2d 261, 267 (Minn.2006) (stating that attorney's failure to comply with deadlines and failure to respond to court orders violated both Rule 3.4(c) and Rule 8.4(d)), *abrogated on other grounds by In re Jones,* 834 N.W.2d 671, 680 n. 9 (Minn.2013).

 The second allegation of misconduct related to the Jacobsen e-mail is that Michael violated Rule 3.1, Minn. R. Prof. Conduct, by advancing a frivolous argument in the tribal court when she asserted that her e-mail to Jacobsen was protected by the attorney-client privilege. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." Minn. R. Prof. Conduct 3.1. Michael asserts that her arguments to the tribal court were offered in good faith and that they were "thoroughly researched." But the relevant standard for determining whether an argument has a good faith basis in law or fact is an objective standard that requires us to consider what a reasonable attorney, in light of that attorney's professional functions, would do under the same or similar circumstances. *In re Panel Case No. 17289,* 669 N.W.2d 898, 905 n. 3 (Minn.2003).

Under this objective standard, the referee did not clearly err by finding that Michael's argument asserting the attorney-client privilege lacked a good faith basis in law or fact or in concluding that Michael violated Rule 3.1, Minn. R. Prof. Conduct. The attorney-client privilege protects communications between attorneys and clients. Minn.Stat. § 595.02, subd. 1(b) (2012); *see also* Fed.R.Evid. 501–502. Clearly, an attorney-client relationship did not exist between Michael and Jacobsen. Nonetheless, Michael appears to have argued to the tribal court that her e-mail to Jacobsen was protected by the attorney-client privilege because it included information regarding her communications with W.M. and E.C. But it is apparent from portions of the e-mail to which privilege clearly does not apply that Michael violated the tribal court's disqualification order when she contacted Jacobsen and advocated in support of W.M.'s and E.C.'s interests. Michael also argued in her submission to the tribal court that the attorney-client privilege applies to communications between one or more attorneys and asserted that her communication with Jacobsen was privileged as a "correspondence between attorneys." But the authority that Michael cited in support of her argument clearly contemplates the application of the attorney-client privilege to certain communications between attorneys representing the same client. *See Natta v. Zletz,* 418 F.2d 633, 637 n. 3 (7th Cir.1969). Michael and Jacobsen were not acting on behalf of the same clients, nor was Jacobsen acting as an attorney. Therefore, a reasonable attorney would not argue that the application of the attorney-client privilege was germane to whether Michael could be held in contempt for her conduct. The referee did not clearly err by concluding that Michael violated Rule 3.1, Minn. R. Prof. Conduct. *See In re Panel Case No. 17289,* 669 N.W.2d at 905–07.[7]

7. Michael also made arguments in the tribal court based on the common-interest privilege,

■ The final allegation of misconduct related to Michael's e-mail to Jacobsen is that Michael's contact with Jacobsen violated Rule 1.16(d), Minn. R. Prof. Conduct. Rule 1.16(d) provides that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests," including "giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred."

The referee erred by concluding that Michael's e-mail to Jacobsen violated Rule 1.16(d). Rule 1.16(d) violations arise when an attorney fails to take "reasonably practicable" steps to protect a client's interests that are affected by the end of the attorney's representation of the client. *See, e.g., In re Rymanowski*, 809 N.W.2d 217, 222 (Minn.2012) (withdrawing from representation one day before motion hearing resulting in client appearing pro se); *In re Nelson*, 733 N.W.2d 458, 462 (Minn.2007) (failing to refund unearned client funds when requested). Rather than failing to take steps to protect her clients' interests affected by the end of her representation, Michael engaged in affirmative misconduct by violating the tribal court's disqualification order. As addressed in this opinion, this misconduct violates other rules of professional conduct. However, we decline to conclude that complying with the tribal court's disqualification order by ceasing the representation of W.M. and E.C. is the type of "reasonably practicable" step contemplated by Rule 1.16(d), Minn. R. Prof. Conduct, that Michael was required to take to protect her clients' interests.[8]

## B.

■ We next consider whether the referee erred in his findings or conclusions related to Michael's contact with Assistant Goodhue County Attorney Erin Kuester. Michael first challenges the referee's finding of fact that Michael contacted Kuester after the tribal court issued its December 30, 2009 disqualification order. Kuester testified that the telephone call with Michael occurred on January 13 or January 14, 2010. Both Michael and Kuester testified that the subject of their conversation was Kuester's decision not to prosecute C.C.'s parents. Kuester recalled that, at the time of their conversation, she had already decided to decline prosecution, and Kuester sent a formal letter to law enforcement advising them of her decision on January 15, 2010. During the telephone call, Michael offered to send Kuester an audio recording as evidence of alleged abuse of C.C. W.M. sent the recording to Kuester on January 14, 2010. Thus, Kuester's testimony that the telephone call took

the work-product doctrine, and a non-disclosure statement in her e-mail to Jacobsen. We do not reach these arguments, which also appear to be completely without merit, because even if these arguments had a good faith basis in law or fact, Michael violated Rule 3.1, Minn. R. Prof. Conduct, when she argued that the attorney-client privilege prevented the tribal court from relying on her e-mail to Jacobsen as a basis for holding her in contempt. *See* Minn. R. Prof. Conduct 3.1 ("A lawyer shall not ... defend a proceeding, or assert ... *an issue* therein, unless there is a basis in law and fact for doing so that is not frivolous...." (emphasis added)).

8. The tribal court stated that Michael's conduct in representing W.M. and E.C. after being disqualified violated Rule 1.16, Minn. R. Prof. Conduct, but the tribal court did not specify which provision of Rule 1.16 Michael violated. A review of the record indicates that Rule 1.16(a) may be implicated by Michael's conduct; but the Director did not allege such a violation in his petition. Therefore, the issue is not before us.

place in mid-January—after Michael was disqualified—is consistent with the timing of other events related to the conversation between Kuester and Michael. Because the record reasonably supports the referee's finding that Michael contacted Kuester after being disqualified, this finding is not clearly erroneous.

 Michael contends that even if the referee did not err by finding that her conversation with Kuester occurred after she was disqualified from representing W.M. and E.C. in the tribal court, the referee clearly erred by finding that her statement to the tribal court regarding the timing of the conversation was knowingly false and by concluding that this conduct violates Rules 3.3(a)(1), 8.4(c), and 8.4(d), Minn. R. Prof. Conduct. Rule 3.3(a)(1) provides, in relevant part, that "[a] lawyer shall not knowingly ... make a false statement of fact or law to a tribunal." Under Rule 8.4(c), it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." And Rule 8.4(d) states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice."

The referee's finding that Michael knowingly made a false statement of fact to the tribal court is reasonably supported by the record. Michael's testimony at the evidentiary hearing demonstrates that she could recall the nature of her conversation with Kuester and that she was aware of other events related to the timing of the telephone call. Additionally, in filings with the tribal court of appeals, Michael represented that her telephone call with Kuester occurred in mid-January 2010. Although Michael now maintains that the telephone call occurred before her disqualification, Michael's inconsistent statements regarding the timing of her contact with Kuester reflect a lack of credibility. We

afford a referee's findings great deference, especially when the referee's findings rest on an attorney's credibility, demeanor, or sincerity. *In re Aitken*, 787 N.W.2d 152, 158 (Minn.2010). In light of the referee's findings, the referee did not clearly err in concluding that Michael's knowingly false statement to the tribal court violated Rule 3.3(a)(1) or in concluding that Michael violated Rules 8.4(c) and 8.4(d) by engaging in conduct involving dishonesty and conduct prejudicial to the administration of justice. *See In re Winter*, 770 N.W.2d 463, 467 (Minn.2009) (concluding that attorney's knowingly false statement of fact made to a tribunal violated several rules, including Rules 3.3(a)(1), 8.4(c), and 8.4(d), Minn. R. Prof. Conduct).

 The referee also concluded, and the Director contends, that Michael's contact with Kuester violated Rule 1.16(d), Minn. R. Prof. Conduct (failure to protect client interests), and Rule 3.4(c), Minn. R. Prof. Conduct (knowingly disobeying an obligation to a tribunal). We disagree.

Contrary to the referee's findings of fact and the Director's assertions, the tribal court determined that Michael had *not* violated its disqualification order by contacting Kuester "because nothing prevent[ed] Ms. Michael from continuing to advocate for the filing of criminal charges in state court." The tribal court's assessment of the scope of its disqualification order is consistent with the plain language of the order. The referee's conclusion that Michael knowingly disobeyed her obligation to a tribunal, in violation of Rule 3.4(c), by contacting Kuester, therefore, is clearly erroneous.

 Michael also did not violate Rule 1.16(d), Minn. R. Prof. Conduct, by contacting Kuester. Rule 1.16(d) addresses the conduct of an attorney after the *termination* of representation. Michael main-

tained an attorney-client relationship with W.M. and E.C. outside of the tribal court. Moreover, Rule 1.16(d) is inapposite because complying with the tribal court's order was not the type of "reasonably practicable" step that Michael was required to take to protect her clients' interests under Rule 1.16(d). *See supra* Part II.A.

## C.

■■■ We next consider whether the referee erred by concluding that Michael's allegation challenging the tribal court's impartiality constitutes a violation of Rule 8.4(d), Minn. R. Prof. Conduct. Rule 8.4(d) prohibits conduct that is "prejudicial to the administration of justice." Disrespectful conduct directed at a tribunal can be prejudicial to the administration of justice. *See, e.g., In re Getty,* 401 N.W.2d 668, 671 (Minn.1987). In *Getty,* we disciplined an attorney who engaged in rude and disrespectful conduct before the district court, including making snide remarks accusing the judge of treating his client unfairly. *See id.* at 669–70. After the judge ruled against Getty's client, Getty told the district court judge "you know you're wrong," and stated that he "knew how [the judge was] going to decide th[e] case before [Getty] came to court." *Id.* at 669. We stated that Getty needed to "learn to show more restraint and more respect for the judicial system even while disagreeing strongly with it or its decisions." *Id.* at 671; *see also In re Friedland,* 268 Ind. 536, 376 N.E.2d 1126, 1128 (1978) (concluding that attorney's statement that the judge was "the biggest fool [he'd] ever seen" was "discourteous conduct which was degrading to a tribunal [and] prejudicial to the administration of justice").

The Director argues that Michael's e-mail questioning the tribal court's impartiality violated Rule 8.4(d). Michael counters that her accusation regarding the tribal court's impartiality was well founded and, therefore, was not a violation of Rule 8.4(d). Similar to the misconduct in *Getty,* the conclusion that Michael's conduct constitutes a violation of Rule 8.4(d) rests on the manner in which she raised her concerns about the tribal court's alleged unfairness. Even if Michael could establish that her concerns were well founded, Michael's flippant rhetorical question at the end of the e-mail that she addressed to the presiding tribal court judge and sent to opposing counsel was unprofessional and disrespectful. Michael's conduct demonstrates a failure to "show ... restraint and ... respect for the judicial system even while disagreeing strongly with it or its decisions." *In re Getty,* 401 N.W.2d at 671; *cf. In re Snyder,* 472 U.S. 634, 645–47, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985) (concluding that a "single incident of rudeness or lack of professional courtesy" was not prejudicial to the administration of justice when rude comments were made in the course of attorney's letter criticizing the court's administration of a law, when the "letter was addressed to a court employee charged with administrative responsibilities," and when the attorney's administrative concerns had merit). We, therefore, conclude that the referee did not clearly err by concluding that Michael violated Rule 8.4(d).

## III.

■■■ Finally, we consider the appropriate discipline for Michael's misconduct. A referee's recommended discipline carries great weight, but it is our ultimate responsibility to determine what discipline, if any, is appropriate. *In re Selmer,* 749 N.W.2d 30, 36 (Minn.2008). The purpose of attorney discipline is not to punish the attorney but to protect the public and the judiciary system and to deter future misconduct. *In re Lundeen,* 811 N.W.2d 602, 608

(Minn.2012). Factors that we consider when determining the appropriate discipline include the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm to the public, and the harm to the legal profession. *Id.* We also consider mitigating circumstances and aggravating factors. *Id.* While we look to cases involving similar misconduct for guidance, we impose discipline "based on each case's unique facts and circumstances." *In re Redburn*, 746 N.W.2d 330, 334 (Minn.2008).

The referee recommended a suspension for a minimum of 60 days with the requirement that Michael petition for reinstatement under Rule 18(a)-(d), RLPR. The referee also recommended that, upon reinstatement, Michael be placed on supervised probation.[9] The Director argues that the recommended discipline is appropriate. Michael contends that even if she committed professional misconduct, her misconduct does not require discipline. Although we decline to impose the discipline recommended by the referee, we conclude that Michael's misconduct warrants suspension and supervised probation.

We first consider the nature of Michael's misconduct. Michael's misconduct is serious in nature and warrants discipline; it involves dishonesty, a frivolous argument, and failure to obey her obligations to a tribunal. *See In re Ulanowski*, 800 N.W.2d at 800 ("Submitting frivolous claims is conduct . . . subject to sanctions. We have held that suspension is appropri-

ate when an attorney files one frivolous, vexatious lawsuit."); *In re Cutting*, 671 N.W.2d 173, 175 (Minn.2003) (observing that we have "disciplined lawyers who failed to comply with court orders"); *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992) ("Honesty and integrity are chief among the virtues the public has a right to expect of lawyers. Any breach of that trust is misconduct of the highest order and warrants severe discipline.").

■■■ Second, we consider the cumulative weight of the disciplinary violations. When assessing the cumulative weight of the violations, we distinguish "a brief lapse in judgment or a single, isolated incident" of misconduct from multiple instances of misconduct "occurring over a substantial amount of time." *In re Murrin*, 821 N.W.2d at 208 (citation omitted) (internal quotation marks omitted). Although Michael's misconduct occurred in the context of a single client matter and occurred over a relatively short period of time, she committed several acts of misconduct that by themselves warrant discipline.

We also consider the harm Michael's conduct poses to the public and the legal profession. Michael's failure to comply with the tribal court's disqualification order harms public confidence in the tribal court, and her frivolous argument in the tribal court resulted in a waste of judicial resources. *See In re Ulanowski*, 800 N.W.2d at 800. In addition, Michael's con-

---

9. In addressing the recommended discipline, the referee observed that his recommendation is based in part on Michael's failure to follow his instruction that the parties submit proposed findings of fact and conclusions of law via United States Mail and on her appeal of the tribal court's contempt order, which was dismissed as frivolous. Michael argues that these facts should not have been considered when formulating a recommendation for appropriate discipline. We need not decide whether these were appropriate considerations because our decision regarding the appropriate discipline for Michael does not rely on them. *See In re Lyons*, 780 N.W.2d 629, 635–36 (Minn.2010) (declining to decide whether referee erred in finding a failure to cooperate with the Director's investigation because "in the end, the discipline [to be] impose[d] would not be any different based on the presence or absence of that finding").

duct in making false statements to a tribunal is harmful to both the public and the legal profession. *See In re Winter,* 770 N.W.2d at 468.

We next consider aggravating and mitigating factors. The referee concluded that Michael's lack of experience is a mitigating factor. Although Michael had been licensed to practice law for approximately eight years when she engaged in misconduct, Michael did not represent clients for the first several years of her practice. After she worked as a law clerk, she took a hiatus from her legal career to return to her former career as a cardiac technician. Moreover, this misconduct arose during Michael's first case as a solo practitioner. When misconduct is related to an attorney's inexperience, we consider the attorney's inexperience as a mitigating factor. *Compare In re Evans,* 461 N.W.2d 226, 228 (Minn.1990), *with In re Leon,* 524 N.W.2d 723, 725 (Minn.1994). Michael's lack of experience is a mitigating factor with respect to her failure to comply with the tribal court's disqualification order, frivolous argument, and disrespectful conduct in the tribal court. However, inexperience does not mitigate acts of dishonesty. *In re Ward,* 563 N.W.2d 70, 72 (Minn.1997). Michael's inexperience, therefore, does not mitigate her knowingly false statement to the tribal court. *See id.*

The referee concluded that Michael's lack of remorse and failure to acknowledge or take responsibility for her conduct are aggravating factors. Throughout these disciplinary proceedings, Michael has pointed to the behavior of others to excuse her conduct rather than take responsibility for her own actions. In addition, Michael expressed her lack of remorse at the evidentiary hearing, when she stated, "I'm sure you want me to be remorseful, but the thing is ... I don't feel like I did anything wrong."

Finally, we consider other cases involving similar misconduct. We have not been asked to impose discipline in a case involving the same facts and circumstances as those presented here. But the referee's recommendation to suspend Michael is consistent with our case law. For example, in *In re Nora,* 450 N.W.2d 328, 329–30 (Minn.1990), we imposed a 30–day suspension when the attorney made misrepresentations to the public and raised frivolous claims in two client matters. We also have imposed suspension as discipline for making false statements. *See, e.g., In re Winter,* 770 N.W.2d at 468, 470 (imposing 120–day suspension when attorney with prior disciplinary history knowingly made false statement to a tribunal and to client's former counsel); *In re Czarnik,* 759 N.W.2d 217, 223–24 (Minn.2009) (imposing 90–day suspension followed by two years' unsupervised probation when attorney knowingly made false statements under oath); *In re Scott,* 657 N.W.2d 567, 568 (Minn.2003) (imposing 30–day suspension when attorney made false statements of fact to court).

We agree with the referee's determination that suspension is the appropriate discipline for Michael and that supervised probation upon reinstatement also is warranted. We disagree, however, with the referee's recommendation that 60 days is the appropriate length for the suspension. In our judgment, a 30–day suspension is appropriate. We also disagree with the referee's recommendation to require Michael to petition for reinstatement under Rule 18(a)-(e), RLPR. When an attorney is suspended for fewer than 90 days, reinstatement by petition ordinarily is not required, and the attorney may apply for reinstatement by affidavit. *See* Rule 18(f), RLPR. We conclude that the facts presented here do not warrant requiring Michael to petition for reinstatement. *Cf. In*

*re Nathanson,* 812 N.W.2d 70, 78–81 (Minn.2012) (requiring attorney to petition for reinstatement when attorney mishandled numerous client matters over several years and had a prior history of misconduct, noting that attorney had not " 'adequately explained why the misconduct occurred and ha[d] not addressed how clients were harmed or what steps he ha[d] taken to prevent further misconduct' " (quoting *In re Crandall,* 699 N.W.2d 769, 772 (Minn.2005))).

Accordingly, we hereby order that:

1. Respondent Lori Mae Michael is suspended from the practice of law in the State of Minnesota for a minimum of 30 days, effective 14 days from the date of the filing of this opinion;

2. Upon reinstatement, Michael shall be placed on probation for two years, subject to the following terms and conditions:

(a) Michael shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation. Michael shall respond to the Director's correspondence by the due date. Michael shall provide the Director with a current mailing address and shall immediately notify the Director of any change of address. Michael shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention. Upon the Director's request, Michael shall authorize the release of information and documentation to verify compliance with the terms of this probation.

(b) Michael shall abide by the Minnesota Rules of Professional Conduct.

(c) Michael shall be supervised by a licensed Minnesota attorney appointed by the Director to monitor compliance with the terms of this probation. Michael shall provide to the Director, within two weeks from the date of the court's order, the names of four attorneys who have agreed to be nominated as her supervisor. If, after diligent effort, Michael is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor. Until a supervisor has signed a consent to supervise, Michael shall on the first day of each month provide the Director with an inventory of client files as described in paragraph 2(d) below. Michael shall make active client files available to the Director upon request.

(d) Michael shall cooperate fully with the supervisor in the supervisor's efforts to monitor compliance with Michael's probation. Michael shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Michael shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Michael's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as may reasonably be requested by the Director.

3. Michael shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals);

4. Michael shall pay $900 in costs pursuant to Rule 24, RLPR;

5. Within one year of the date of filing of this opinion, Michael shall file with the Clerk of Appellate Courts and serve on the Director proof of her successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation

shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR; and

6. Michael shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, Michael files with the Clerk of Appellate Courts and serves on the Director an affidavit establishing that she is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.

So ordered.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.